ATTORNEYS FOR APPELLANT
Steven L. Langer
Tara M. Wozniak
Valparaiso, Indiana

Timothy J. Kennedy
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Robert D. Brown
Merrillville, Indiana



**FILED**
Jun 16 2009, 12:06 pm
**CLERK**
of the supreme court,
court of appeals and
tax court



# In the
# Indiana Supreme Court

No. 45S05-0906-CV-273

BRENDA SPAR,

*Appellant (Plaintiff below),*

v.

JIN S. CHA, M.D.,

*Appellee (Defendant below).*

Appeal from the Lake Superior Court, No. 45D10-0402-CT-0020
The Honorable John R. Pera, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A05-0611-CV-683

**June 16, 2009**

**Boehm, Justice.**

We hold that, with possible exceptions not relevant here, incurred risk is not a defense to medical malpractice based on negligence or lack of informed consent. We also hold that the plaintiff's consents to prior surgeries were admissible to counter her lack-of-informed-consent claim to the extent that claim was based on failure to inform her of typical risks in the procedure. We reverse and remand for a new trial.

**Facts and Procedural History**

Brenda Spar brought this medical malpractice action against obstetrician/gynecologist Jin S. Cha, who performed laparoscopic surgery on Spar in 2001. Spar alleged negligence in failing to advise her of less risky procedures and also failure to obtain informed consent.

A. *Spar's Prior Medical History*

Spar underwent emergency surgery and spent approximately two months in an intensive care unit after an auto accident in 1986. She suffered a detached liver and her spleen was removed. Because the accident and subsequent surgeries resulted in extensive scarring to her abdomen, Spar consulted plastic surgeon McKay McKinnon shortly after her recovery. Dr. McKinnon performed a series of scar-revision procedures on Spar in 1987, 1989, 1991, and 1994. Before each procedure Dr. McKinnon and Spar discussed the risks of surgery, including bowel perforation, inflammation, infection, pain, and possible need for additional surgeries.

In 2000, after Spar experienced abdominal pain, she was diagnosed with gallstones and her gallbladder was removed in July of 2000. Before the procedure, general surgeon M. Nabil Shabeeb explained the risks of abdominal surgery, which included bleeding, infection, and injury to internal organs including the bowel and bile duct. Dr. Shabeeb first attempted to remove Spar's gallbladder laparoscopically, i.e., by creating an incision below Spar's navel, insufflating the abdomen using carbon dioxide gas, and viewing the internal organs by inserting a small camera. Spar's internal scarring from the prior surgeries prevented completion of the procedure laparoscopically, and a larger incision was made to permit viewing of the organs directly.

B. *Consultation with and Treatment by Dr. Cha*

Spar consulted Dr. Cha in 1999 and again in November of 2000 because of difficulty in conceiving a child. Dr. Cha suspected Spar's fallopian tubes were blocked and that she had endometriosis, a build-up of the uterine lining inside the pelvic cavity. Dr. Cha recommended a hysterosalpingogram (HSG), a real-time x-ray to identify obstruction of the fallopian tubes, but the results of the HSG were inconclusive. Dr. Cha suggested a laparoscopy to determine if Spar's fallopian tubes were clogged. He explained that a laparoscopy was a simple outpatient procedure

and that if he found an abnormality he might be able to fix it.   Dr. Cha was aware of Spar's earlier gallbladder removal and knew Dr. Shabeeb had been unable to complete that surgery laparoscopically.

The procedure was scheduled for January 12, 2001.   After Spar had changed into a hospital gown, she completed and signed a consent form to "Video Laparoscopy Possible Laparotomy."   The consent form, among other things, stated that the

> nature, purpose and possible complications of the procedure(s) and medical services described above, the risks and benefits reasonably to be expected, and the alternative methods of treatments have been explained to me by a physician, and I understand the explanation I have received.

Spar first saw Dr. Cha that morning when she was on a gurney and hooked up to an I.V. outside the operating room.   Dr. Cha explained how the surgery would be performed and told her that the procedure posed possible complications including bleeding, bowel injury, and infection.   Spar told Dr. Cha that she did not want him to make any long incisions, which Dr. Cha took to mean she did not want a laparotomy, and Dr. Cha told Spar that he would make only two small cuts.   A preoperative report reflects that Spar "refused laparotomy."

The laparoscopy was difficult because of Spar's scar tissue.   Dr. Cha's field of vision was limited, but he diagnosed Spar with pelvic endometriosis, a bilateral tubal occlusion, and adenomyosis of the uterus.   At the conclusion of the procedure, Dr. Cha was unaware of any complications.

### C. *Post-operative Complications*

Spar was discharged after the surgery and was prescribed Tylenol with codeine for pain relief.   The following day she experienced abdominal pain and nausea, and her husband, Christopher, called Dr. Cha to report this.   Dr. Cha was concerned that Spar was experiencing a complication from the laparoscopy and recommended that Christopher bring her to the emergency room.   Christopher responded that Spar did not want to come to the hospital, so Dr. Cha prescribed a new pain medication.

Spar took the medication as prescribed, but the next day she felt feverish and one of her incisions began to leak.   Spar had Christopher contact Dr. Cha for an antibiotic, and again Dr. Cha

3

told Christopher to bring her to the emergency room, but Spar declined. Dr. Cha called in a prescription for an antibiotic and told Christopher that if Spar was not feeling better by the next day she should come to the hospital.

The following morning, after Spar experienced increased leakage from her incision and severe abdominal inflammation, Christopher took her to the emergency room. Dr. Shabeeb performed an emergency surgery and determined that Spar's bowel had been perforated during the laparoscopy. A segment of Spar's bowel was removed, and her abdominal cavity was disinfected.

In the following weeks, Spar developed peritonitis, cysts, and fistulas and was hospitalized for five and one-half weeks. She returned to Dr. McKinnon the following June for cosmetic repair, and she required follow-up surgery in November 2001 to treat her cysts and remove an infected fallopian tube. She continues to experience periodic fever-like symptoms and severe bowel irregularity.

D. *Spar's Malpractice Action*

Spar initiated the present suit by submitting a complaint to a medical review panel in accordance with the Indiana Medical Malpractice Act, Ind. Code § 34-18-8-4 (2004). The panel unanimously found that Dr. Cha had failed to meet the standard of care, and the case proceeded to trial under two theories: (1) negligence in failing to employ alternative diagnostic procedures in lieu of surgery, and (2) failure to obtain Spar's informed consent to the chosen course of treatment.

Although the experts and medical review panel members agreed that bowel perforation commonly occurs during laparoscopy without negligence, Spar's witnesses testified that (1) because Spar was forty-one years old at the time of consultation and had a complicated history of abdominal surgery, Dr. Cha should have assessed Spar's ovarian function and her husband's sperm viability before considering any invasive diagnostic procedures; (2) Dr. Cha should not have performed the laparoscopy in view of Spar's medical history; (3) Dr. Cha should have referred Spar to an infertility specialist; (4) Dr. Cha should not have gone forward with the procedure after Spar expressed her aversion to large incisions outside the operating room; and (5)

4

Dr. Cha should have insisted that Spar come into the emergency room rather than prescribing additional medication for postoperative abdominal pain.

The plaintiff's evidence on failure to obtain informed consent included testimony that Dr. Cha should have clarified that the surgery would not necessarily enhance Spar's fertility, that there were additional risks due to her prior abdominal procedures, and that alternative means of diagnosis and treatment were available, including ovarian reserve tests and in vitro fertilization. The plaintiff's witnesses also testified that informed consent should be obtained well in advance of surgery, not on the day of the procedure. Spar testified that she would not have consented to the laparoscopy had Dr. Cha informed her that other forms of testing and treatment were available, that the surgery would be purely diagnostic, and that even if the surgery were performed correctly, it could result in a bowel injury that would necessitate more serious operations.

Dr. Cha introduced expert testimony that he had complied with the applicable standard of care in treating Spar and obtaining her informed consent to the laparoscopy. Evidence of Spar's informed consent to the surgeries by Drs. McKinnon and Shabeeb was admitted over Spar's objection.

At the close of Dr. Cha's case-in-chief, the trial court denied Spar's motion for judgment on the evidence on the issue of incurred risk and instructed the jury as follows:

> The Plaintiff incurs the risk of injury if she actually knew of the specific danger, understood the risk involved and voluntarily exposed herself to that danger. Incurred risk requires much more than the general awareness of a potential for mishap. Determining whether the Plaintiff has incurred the risk of injury requires a subjective analysis focusing upon:
>
> First, the Plaintiff's actual knowledge and appreciation of a specific risk; and
>
> Second, the Plaintiff's voluntary acceptance of that risk. . . .

Dr. Cha's counsel argued in closing that "[t]he Judge has instructed you on incurred risk. . . . The risk at issue is infection. . . . Ms. Spar admits that she was told by Dr. Cha about the risk of infection, and that she knew that risk anyway from her own common knowledge. . . . [S]he accepted the risk by going forward with the procedure."

5

The jury returned a general verdict in favor of Dr. Cha. Spar appealed, arguing that the trial court erred by submitting incurred risk to the jury and by admitting evidence of Spar's consent to prior surgeries. The Court of Appeals reversed and remanded. Spar v. Cha, 881 N.E.2d 70, 70 (Ind. Ct. App. 2008). The Court held that, except where a patient has disregarded her physician's instructions, incurred risk is not a defense to claims of lack of informed consent or negligent performance of a medical procedure. Id. at 74–75. The Court further held that evidence of Spar's consent to prior surgeries was inadmissible propensity evidence. Id. at 76. Judge Darden dissented, arguing that an incurred-risk defense to medical malpractice was not limited to patients who do not follow their doctors' instructions. Id. at 77. We grant transfer concurrent with this opinion.

## I. Negligence, Informed Consent, and Incurred Risk

A. *Spar's Two Theories*

In a medical malpractice action based on ordinary negligence, the plaintiff must establish (1) a duty on the part of the defendant physician in relation to the plaintiff, (2) failure of the physician to meet the requisite standard of care, and (3) an injury to the plaintiff resulting from that failure. Bader v. Johnson, 732 N.E.2d 1212, 1216–17 (Ind. 2000); Oelling v. Rao, 593 N.E.2d 189, 190 (Ind. 1992). The duty of a treating physician is ordinarily to deliver medical services that meet the standard of ordinary care. Vergara v. Doan, 593 N.E.2d 185, 187 (Ind. 1992). As a result, breach and causation are usually, as here, the only issues. Spar's negligence claim was that Dr. Cha deviated from the standard of care by foregoing noninvasive fertility tests and instead performing a contraindicated surgical procedure.

"Lack of informed consent" is a distinct theory of liability. Hamilton v. Ashton, 846 N.E.2d 309, 317 (Ind. Ct. App. 2006), clarified on reh'g, 850 N.E.2d 466 (Ind. Ct. App. 2006). Lack of informed consent to a harmful touching in medical malpractice cases was traditionally viewed as a battery claim. More recently, unless there is a complete lack of consent, the theory is regarded as a specific form of negligence for breach of the required standard of professional conduct. W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 32, at 190 (5th ed. 1984); Revord v. Russell, 401 N.E.2d 763, 766 (Ind. Ct. App. 1980); Van Sice v. Sentany, 595

6

N.E.2d 264, 267 n.6 (Ind. Ct. App. 1992). Lack of informed consent is premised on the physician's duty to disclose to the patient material facts relevant to the patient's decision about treatment. See Bader, 732 N.E.2d at 1217. To succeed on a lack of informed consent action, the plaintiff must prove "(1) nondisclosure of required information; (2) actual damage . . . (3) resulting from the risks of which the patient was not informed; (4) cause in fact, which is to say that the plaintiff would have rejected the medical treatment if she had known the risk; and (5) that reasonable persons, if properly informed, would have rejected the proposed treatment." 1 Dan B. Dobbs, The Law of Torts, § 250 (2001) (footnotes omitted). Spar's lack-of-informed-consent theory was that her consent was not informed because Dr. Cha did not explain the less risky alternatives and also failed to explain the "risks, benefits and alternatives to the elective diagnostic laparoscopy."

B. *Incurred Risk*

The notion of "incurred" or "assumed" risk has largely become obsolete in an era of comparative fault. See Restatement (Third) of Torts: Apportionment of Liability § 2 Reporters' Note cmt. i (2000) ("This Section abandons the traditional doctrine of implied, voluntary assumption of risk . . . ."). In Indiana this has been accomplished by the Comparative Fault Act as construed in Heck v. Robey, 659 N.E.2d 498, 504–05 (Ind. 1995). See also Smith v. Baxter, 796 N.E.2d 242, 245 (Ind. 2003). Contributory negligence has been said to remain a complete defense in medical malpractice actions. Cavens v. Zaberdac, 849 N.E.2d 526, 529 (Ind. 2006). The parties assume that because medical malpractice is not subject to the Comparative Fault Act, the traditional doctrine of incurred or assumed risk remains intact in that arena, and we decide the case on that basis.

The term "assumption of risk,"[1] as it is known in most jurisdictions, has been used in at least four different senses:

---

[1] Some Indiana cases have stated that "incurred risk" differs from "assumed risk," reserving "assumed risk" for contractually assumed obligations and designating all other flavors as "incurred." See Whitebirch v. Stiller, 580 N.E.2d 262, 264 n.2 (Ind. Ct. App. 1991). More recent cases have treated the terms interchangeably. See Gyuriak v. Millice, 775 N.E.2d 391, 394 n.1 (Ind. Ct. App. 2002).

1. "Express," in which "the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care . . . , and agrees to take his chances as to injury from a known or possible risk." Restatement (Second) of Torts § 496A cmt. c (1965).

2. "Implied primary," in which "the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk," and is deemed to have impliedly agreed to relieve the defendant of responsibility, and to take his own chances. A spectator at a baseball game consents to the game's proceeding without precautions to protect from being hit by the ball. Id.

3. "Implied secondary," in which "the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it." An example is an independent contractor who knows that he has been furnished by his principal with a machine in dangerous condition but reasonably continues to work with it. Id.

4. "Unreasonable," in which the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence. Id.

See also Keeton, supra, § 68, at 480–81, 496–97.

The first three categories of assumption of risk are predicated on the plaintiff's expressed or implied consent. 57B Am. Jur. 2d Negligence § 759 (2004) (citing Reddell v. Johnson, 942 P.2d 200, 203 (Okla. 1997); Ex parte Barran, 730 So. 2d 203, 206 (Ala. 1998); Crews v. Hollenbach, 751 A.2d 481, 488 (Md. 2000)). They prevent one who consents to a known risk from suing for damages arising from that risk. Under Indiana precedent, the consent must be based on actual knowledge of the risk, not merely "general awareness of a potential for mishap." Clark v. Wiegand, 617 N.E.2d 916, 918 (Ind. 1993) (quoting Beckett v. Clinton Prairie Sch. Corp., 504 N.E.2d 552, 554 (Ind. 1987)).

Assumption of risk is often described as an affirmative defense, see, e.g., Get-N-Go, Inc. v. Markins, 544 N.E.2d 484, 486 (Ind. 1989), aff'd on reh'g, 550 N.E.2d 748 (Ind. 1990), but that depends on the category of incurred risk. A defense of express or implied primary assumption of

8

risk negates the "duty" or "breach" required for a negligence claim. In other words, under express or implied primary assumption of risk, a defendant is relieved of the duty of care or the defendant's conduct is not negligent with respect to the plaintiff. See Keeton, supra, § 68, at 480–81.

> If the defendant has no duty of care, or is not negligent, an element necessary to the plaintiff's prima facie case is missing. When assumed risk means that the plaintiff's consent has shifted responsibility in this way, then it does not look much like an orthodox affirmative defense. It is rather an assertion that the plaintiff has not proved duty or negligence.

1 Dobbs, supra, § 212. These forms of assumption of risk may not require pleading as an affirmative defense under Trial Rule 8, because they negate an element of the claim. Express and implied primary assumption of risk nevertheless bar recovery in the face of what would otherwise be negligent conduct, and the burden of proof to establish the plaintiff's consent is on the defendant. Id. § 212 n.4; see also Restatement (Second) of Torts § 496G cmt. c ("Assumption of risk . . . comes into question only where there would otherwise be a breach of some duty owed by the defendant to the plaintiff. It is then a defense, which relieves the defendant of the liability to which he would otherwise be subject. The burden of proof is therefore upon the defendant.").

Implied secondary assumption of risk does not negate the defendant's duty or breach. It asserts the plaintiff's conduct as a defense to the defendant's negligence or breach and therefore is a classic affirmative defense. Blackburn v. Dorta, 348 So. 2d 287, 290 (Fla. 1977); see also Gyuriak v. Millice, 775 N.E.2d 391, 394–95 (Ind. Ct. App. 2002) (noting the difference between implied primary and secondary assumption of risk).

Finally, assumed risk and contributory negligence may in some cases be supported by the same facts, Keeton, supra, § 68, at 481, but they are separate defenses. Richardson v. Marrell's, Inc., 539 N.E.2d 485, 486 (Ind. Ct. App. 1989), trans. denied. "[A]ssumption of risk rests upon the voluntary consent of the plaintiff to encounter the risk and take his chances, while contributory negligence rests upon his failure to exercise the care of a reasonable man for his own protection." Restatement (Second) of Torts § 496A cmt. d. Similarly, lack of informed consent and incurred risk are distinct tort concepts. As explained above, failure to obtain informed consent is a cause of action based on negligent failure to disclose matters that the standard of care demands the physician make known to the patient. Incurred risk, on the other hand, is a defense to negligence claims premised on the plaintiff's express or implied consent to relieve the defendant of the duty of

care, or on the plaintiff's choice to voluntarily encounter a risk already created by the defendant's negligence. See Faile v. Bycura, 374 S.E.2d 687, 688 (S.C. Ct. App. 1988) (noting the distinction between the two doctrines).

### C. *Incurred Risk as a Defense to Negligence in Diagnosis or Treatment*

Spar claims the trial court committed two errors based on its mistaken view of incurred risk. She contends the evidence did not establish any form of incurred risk as to either her claim for negligent advice or her claim for lack of informed consent. As a result, she argues, her motion for judgment on the evidence should have been granted and it was error to instruct the jury on incurred risk. The Court of Appeals held that incurred risk could not function as a defense to lack of informed consent or negligent performance of a medical procedure, except when a patient fails to follow the physician's instructions. Spar, 881 N.E.2d at 74–75 (citing Faulk v. Nw. Radiologists, P.C., 751 N.E.2d 233, 243–44 (Ind. Ct. App. 2001); King v. Clark, 709 N.E.2d 1043, 1048 (Ind. Ct. App. 1999)).

We agree with the Court of Appeals that assumption of risk—whether in the express, primary, or secondary sense—has little legitimate application in the medical malpractice context. As the District of Columbia Court of Appeals has explained, "the disparity in knowledge between professionals and their clientele generally precludes recipients of professional services from knowing whether a professional's conduct is in fact negligent." Morrison v. MacNamara, 407 A.2d 555, 567 (D.C. 1979) (citations omitted); accord Smith v. Hull, 659 N.E.2d 185, 194 n.6 (Ind. Ct. App. 1995) (Sullivan, J., concurring). As a result, "there is virtually no scenario in which a patient can consent to allow a healthcare provider to exercise less than 'ordinary care' . . . ." Storm v. NSL Rockland Place, LLC, 898 A.2d 874, 884 (Del. Super. Ct. 2005). The patient is entitled to expect that the services will be rendered in accordance with the standard of care, however risky the procedure may be. We do not agree with the Court of Appeals that failure to follow instructions is the only exception, but we need not address under what other circumstance the defense may apply.[2]

---

[2] One court has found assumed risk by a patient who underwent a surgical procedure but in advance expressly refused a blood transfusion for religious reasons. See Shorter v. Drury, 695 P.2d 116, 124

Moreover, even if the incurred-risk defense is available in some medical malpractice cases, the record in this case is devoid of any evidence that Spar somehow incurred the risk of negligent care. Spar's claim was that Dr. Cha was negligent for not completing a more comprehensive fertility workup and instead performing a risky, non-emergent surgery. Spar's signing of the preoperative consent form, her discussion with Dr. Cha of the risks of the surgery, and her decision to undergo the procedure do not address her claim that the advice to proceed was negligently given. Accordingly, Dr. Cha's incurred-risk defense to Spar's claim of negligent advice was not supported by the evidence and should not have been submitted to the jury.

### D. *Incurred Risk as a Defense to Lack of Informed Consent*

Indiana Code section 34-18-12-8 in fact provides that "[a] patient may refuse to receive some or all of the information" appropriate in an informed-consent disclosure. Many jurisdictions recognize either by judicial ruling or statute that a patient may waive her right to

---

(Wash. 1985); see also 1 Dobbs, supra, § 213 & n.4. The rationale is that a physician would ordinarily have a duty to transfuse blood if the necessity arose during surgery, but the patient's express refusal ahead of time relieves the physician of this duty, or alternatively "establish[es] a standard of care that shows he has breached no duty." Id. § 213. Another exceptional circumstance may exist when a patient elects to forego conventional care and instead requests experimental treatment. See Boyle v. Revici, 961 F.2d 1060, 1063 (2d Cir. 1992); Storm, 898 A.2d at 884 n.41; 1 Dobbs, supra, § 212. Assumption of risk might also be applicable when a patient waives informed consent. This notion is discussed in Part D, infra.

The precedents cited by the Court of Appeals referred to incurred risk arising from the patient's failure to follow a doctor's instructions, but we do not believe this is either a necessary or sufficient basis for incurred risk as a defense to a medical malpractice claim. The plaintiffs in both cases disregarded physicians' instructions and delayed seeking treatment for their conditions. We agree that this disregard supported instructions on contributory negligence, but not on incurred risk. Neither plaintiff either expressly or impliedly consented to relieve the doctor of a professional standard of care, or knowingly and voluntarily embraced risks occasioned by the physician's negligence. Rather, they simply failed to take reasonable steps for their own protection from an identified danger. See 61 Am. Jur. 2d Physicians, Surgeons, Etc. § 281 (2002) ("A patient's refusal to submit to the treatment suggested by the defendant physician does not constitute an assumption of risk that such refusal might ultimately result in greater injury to the patient than would otherwise be occasioned because of the defendant's malpractice." (citing Dodds v. Stellar, 175 P.2d 607, 613–15 (Cal. Ct. App. 1946))); Keeton, supra, § 68, at 485 (explaining that a pedestrian who walks into a stream of traffic does not assume the risk of motorists' negligence; the jaywalker is instead contributorily negligent); cf. Hull, 659 N.E.2d at 192 (patient's insistence that doctor proceed with untimely elective surgeries supported defense of contributory negligence); Fall v. White, 449 N.E.2d 628, 632–33 (Ind. Ct. App. 1983) (patient's failure to follow doctor's instructions and provide complete and accurate information sustained defense of contributory negligence), trans. denied.

informed consent. See, e.g., Arato v. Avedon, 858 P.2d 598, 609 (Cal. 1993) (noting that a "patient may validly waive the right to be informed"); Holt v. Nelson, 523 P.2d 211, 219 (Wash. Ct. App. 1974) ("A physician need not disclose the hazards of treatment when the patient has requested she not be told about the dangers . . . ."); Del. Code Ann. tit. 18, § 6852(b)(2) (1999) (acknowledging waiver as a defense to lack-of-informed-consent claims); Utah Code Ann. § 78B-3-406(3)(c) (2008) (same); Vt. Stat. Ann. tit. 12, § 1909(c)(2) (2002) (same). But a patient who waives informed consent assumes only those risks associated with nondisclosure. Presumably this would preclude the patient from claiming she would not have proceeded if disclosure had been made. But a waiver of informed consent does not assume risks associated with negligent performance of the underlying procedure or treatment. In any event, there is no evidence that Spar waived her right to informed consent or otherwise assumed the risks related to negligent nondisclosure. Incurred risk was therefore not a defense to Spar's lack-of-informed-consent claim and should not have been submitted to the jury.

E. *Resolution of this Case*

We conclude that it was error for the trial court to deny Spar's motion for judgment on the evidence and to instruct the jury on incurred risk. The jury rendered a general verdict, so we are unable to tell whether it found that Dr. Cha was non-negligent or that Spar incurred the risk of injury. We therefore reverse the judgment of the trial court and remand for a new trial.

## II. Admissibility of Consents From Prior Procedures

The second issue is whether the trial court properly admitted evidence of Spar's consent to prior surgeries.

All relevant evidence is admissible, except as otherwise provided by court rules or applicable law. Ind. Evidence Rule 402. Evidence which is not relevant is not admissible. Id. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. "Although relevant, evidence may be excluded if its

12

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Evid. R. 403.

The evidence at issue here was of Spar's consent to the surgeries performed by Drs. Shabeeb and McKinnon. Both doctors testified that they informed Spar of various risks associated with their abdominal procedures. Dr. Cha offered the evidence to refute Spar's lack-of-informed consent theory and to show that Spar incurred the risk of surgery. We have already held that incurred risk was inapplicable in this case. The prior-consent evidence was therefore not admissible to support Dr. Cha's incurred-risk defense. The remaining question is whether the evidence was relevant and admissible on the issue of informed consent.

As explained supra, physicians have a duty to disclose to their patients information material to a proposed course of treatment. See Bader v. Johnson, 732 N.E.2d 1212, 1217 (Ind. 2000). A physician must disclose the facts and risks of a treatment which a reasonably prudent physician would be expected to disclose under like circumstances, and which a reasonable person would want to know. Weinberg v. Bess, 717 N.E.2d 584, 588 n.5 (Ind. 1999). A physician "need not advise concerning risks of which the patient already has actual knowledge." Hill v. Medlantic Health Care Group, 933 A.2d 314, 331 n.16 (D.C. 2007). There is "no need to disclose risks that are likely to be known by the average patient or that are in fact known to the patient usually because of a past experience with the procedure in question." Logan v. Greenwich Hosp. Ass'n, 465 A.2d 294, 300 (Conn. 1983).

A plaintiff alleging lack of informed consent must establish causation-in-fact, i.e., but for the physician's negligent nondisclosure, the patient—or a reasonable patient in the same or similar circumstances—would not have consented to the treatment in question. Bowman v. Behghin, 713 N.E.2d 913, 917 (Ind. Ct. App. 1999); Kranda v. Houser-Norborg Med. Corp., 419 N.E.2d 1024, 1038 (Ind. Ct. App. 1981).

The prior consents were not relevant to Spar's claim of negligence in failing to advise of alternative, less risky treatment. But Spar's lack-of-informed-consent theory was, at least in part, that Dr. Cha failed to properly apprise her of the risks associated with the abdominal laparoscopic procedure. Spar also testified that she would not have consented to the surgery had Dr. Cha

13

informed her that the procedure could result in a bowel perforation which would necessitate additional treatment. Two issues at trial, therefore, were to what extent Dr. Cha was required to disclose information about bowel injury and other surgical risks, and whether Spar would have actually chosen to forego the procedure had Dr. Cha properly informed her of all risks and potential complications.

Spar's understanding of the risks from her prior abdominal surgeries was relevant to both of these issues. If Spar had been made aware of typical complications by Dr. McKinnon and Dr. Shabeeb and already had a thorough appreciation of the common risks from invasive abdominal procedures, the jury was entitled to take her knowledge into consideration when assessing whether she would have declined surgery in light of more comprehensive disclosure. For these reasons, Spar's prior consents were relevant and admissible, and the trial court did not err by permitting Dr. Cha to introduce them.

**Conclusion**

This cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.