James M. THOMPSON, D.O.,
Appellant–Defendant,

v.

Amy GEROWITZ, Individually, and as
Surviving Spouse and Personal Repre-
sentative of the Estate of Martin Ger-
owitz, Appellee–Plaintiff.

No. 49A05–1005–CT–296.

Court of Appeals of Indiana.

Feb. 16, 2011.

Louis W. Voelker, Matthew S. Ver Steeg, Eichorn & Eichorn, LLP, Hammond, IN, Attorneys for Appellant.

Rich Hailey, Marybeth Ramey, Justin W. Leverton, Ramey & Hailey Law Firm, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BARNES, Judge.

### Case Summary

Dr. James Thompson appeals judgment entered against him and in favor of Amy Gerowitz, individually and as the surviving spouse and personal representative of the Estate of Martin Gerowitz (collectively "the Appellees"). We affirm in part, reverse in part, and remand.

### Issues

Dr. Thompson raises two issues, which we reorder and restate as:

I. whether the trial court properly denied his motion for judgment on the evidence; and

II. whether the trial court properly denied his motions to strike a juror, to question her further, or for a mistrial.

### Facts

Martin died during a medical procedure to collect stem cells, and Dr. Thompson was a physician involved with the stem cell collection process. The Appellees sued Dr. Thompson for Martin's alleged wrongful death, and the matter proceeded to trial.

On April 8, 2010, during voir dire, a panel of prospective jurors, including Juror Odam, was questioned by Dr. Thompson as follows:

I just want to know from everybody; does anybody have any life experiences

that they have that might make them have more difficulty in being fair and impartial to Dr. Thompson simply because he is a physician. Any negative experiences with physicians by you and your close family members;. anybody? Has anybody ever sued a physician?

Tr. p. 205. Juror Odam did not respond affirmatively to any of these questions and was not specifically questioned by Dr. Thompson on this issue.

During a sidebar, the attorneys and the trial court discussed prospective jurors. The trial court then informed the jury that, in addition to the four jurors selected earlier, Juror Odam and two others would complete the jury. Immediately thereafter, the following exchange took place on the record:

Juror Odam: I would like to say something. He asked everybody else if they would have a problem.

The Court: Okay.

Juror Odam: And I will.

The Court: Okay.

Juror Odam: Because of being a widow myself and trying to go after the doctor for negligence, he didn't ask me. I have a; I am going to have a hard—

The Court: Okay, well be that as it may, our system is an adversary system where people ask questions on both sides and we go accordingly, so you will be instructed on Monday morning to be a good juror, and I am sure you will be. I am sure all of you will do the best job you can and it will be fine. So I am going to leave you; we are going to go off the record now, and I am going to

leave you with; you are going to go, we are going to excuse you three to go with our bailiff here and she will give you some preliminary instructions, but generally you will be back probably 9:00 on Monday, and we will swear the jury in and we will go from there, okay. All right, thank you, very much.

*Id.* at 229. Outside the presence of the jury, the attorneys and trial court discussed various matters related to the trial. During this discussion, defense counsel stated he was "mystified" by Juror Odam's statement. *Id.* at 240. The trial court responded, "I don't think there is anything; that we can be done [sic] to cure that I know of at this point...." *Id.* at 240–41. The trial court referenced presiding over more than 250 jury trials and concluded, "I think the jury is a good one, and I am sure it will be just fine for both sides...." *Id.* at 243.

On April 12, 2010, the morning of trial, the attorneys and trial court discussed a motion to strike Juror Odam filed by Dr. Thompson.[1] Dr. Thompson first argued that the initial questions to the panel collectively should have elicited some response from Juror Odam indicating bias and allowing follow-up questioning. The trial court denied the motion to strike based on its experience and belief that the process was fair. Dr. Thompson further argued that he would like to question Juror Odam outside the presence of the jury regarding the extent of her bias and, in the alternative, sought a mistrial. Plaintiff's counsel objected, and the trial court denied both requests.

---

1. Juror Odam's statement to the trial court was on the record. During the April 12, 2010 discussion of the matter, however, the parties were not sure if the statement was on the record and attempted to recreate the record. Defense counsel explained that Juror Odam, with the trial court's permission, stretched her legs and stood "to the left and outside the box" during the questioning of prospective jurors. Tr. p. 251. Defense counsel then asked the other jurors separately if they could be fair and impartial but did not specifically ask Juror Odam.

At the close of the Appellees' case-in-chief, Dr. Thompson moved for judgment on the evidence on the issue of causation. The trial court denied the motion. After the conclusion of Dr. Thompson's evidence, he renewed his motion for judgment on the evidence. The trial court again denied the motion. The jury returned a verdict in the Appellees' favor in the amount of $420,000. Dr. Thompson now appeals.

## Analysis

### I. Motion for Judgment on the Evidence

■ Dr. Thompson argues that the trial court improperly denied his motion for judgment on the evidence on the issue of causation. Indiana Trial Rule 50 allows a party to move for judgment on the evidence when some or all of the issues in a case tried before a jury are not supported by sufficient evidence. *TRW Vehicle Safety Systems, Inc. v. Moore*, 936 N.E.2d 201, 214 (Ind.2010). When reviewing a motion for judgment on the evidence, we look at the evidence and the reasonable inferences drawn most favorable to the non-moving party. *Id.* "We will reverse only when 'there is no substantial evidence supporting an essential issue in the case.'" *Id.* (citation omitted). Thus, to overturn a trial court's denial of a motion for judgment on the evidence and take the issue from the jury, the evidence must support without conflict only one inference, which is in favor of the defendant. *Id.*

### A. Medical Malpractice

■ In a medical malpractice action based on negligence, the plaintiff must establish: (1) a duty on the part of the physician in relation to the plaintiff; (2) the failure of the physician to meet the requisite standard of care; and (3) an injury to the plaintiff resulting from that failure. *Spar v. Cha*, 907 N.E.2d 974, 979 (Ind.2009). Dr. Thompson argues the trial court improperly denied his motion for judgment on the evidence on the issue of causation. The Appellees argue that the opinion of the medical review panel alone was sufficient to support the denial of the motion for judgment on the evidence. The opinion provided in part:

A. Drs. Steiner and Logie find that the evidence supports the conclusion that said Defendant failed to comply with the appropriate standard of care and charged in the complaint. Drs. Steiner and Logie further find that said Defendant's conduct complained of was a factor of the resultant damages, and

B. Dr. Galup is unable to make a decision as to whether said defendant's conduct complained of did or did not comply with the appropriate standard of care as charged in the complaint.

Pl. Exhibit 1.

Our supreme court has explained:

The purpose of the medical review panel is to conduct a rational inquiry into the extent and source of the patient's injuries for the purpose of forming its expert opinion on the issues to be decided. Although not conclusive, the expert opinion or opinions of the medical review panel are admissible as evidence.

*Bonnes v. Feldner*, 642 N.E.2d 217, 220–21 (Ind.1994) (citations omitted). In determining whether the opinion of one member of the panel was evidence sufficiently probative of breach of duty to withstand a motion for judgment on the evidence, our supreme court concluded, "we think the opinions of individual members of a medical review panel are imbued with sufficient probative value to permit the party favored by such an opinion to withstand a motion for judgment on the evidence." *Id.* at 221.

Dr. Thompson asserts that the opinion of the medical review panel is not the "substantial evidence" necessary to withstand a motion for judgment on the evidence. He contends that because the complaint submitted to the medical review panel was never received by the jury, it "never learned the exact allegations assessed by the panel members." Appellant's Br. p. 37. The reasonable inference to be drawn from the opinion is that Dr. Thompson's breach caused Martin's damages, including his death. Although the admission of the complaint could have been relevant to the jury's assessment of the weight to be given to the medical review panel's opinion, its absence does not render the opinion insufficient to withstand a motion for judgment on the evidence.

██ Dr. Thompson also argues that the opinion was contradicted by the trial testimony of Dr. Logie and Dr. Steiner. We are mindful that, in our review of a ruling on a motion for judgment on the evidence, we must look only to the evidence and the reasonable inferences most favorable to the Appellees as a non-moving party. *See Smith v. Baxter*, 796 N.E.2d 242, 246 (Ind. 2003). Nevertheless, to the extent the doctors' trial testimony was inconsistent with their conclusions as part of the medical review panel, it was for the jury to consider the evidence and weigh it accordingly. It would not have been appropriate for the trial court to weigh the conflicting evidence in ruling on the motion for judgment on the evidence. *See id.* (affirming the trial court's denial of a motion for judgment on the evidence and holding,

"the interpretation of the evidence, with the necessary assessments of weight and credibility, was properly left to the sound judgment of the jury.").[2] The trial court properly denied Dr. Thompson's motion for judgment on the evidence on this issue.

### B. Informed Consent

██ Dr. Thompson further contends that the evidence was insufficient to establish the cause in fact element of the informed consent claim. Lack of informed consent is a distinct theory of liability premised on the physician's duty to disclose to the patient material facts relevant to the patient's decision about treatment. *Spar*, 907 N.E.2d at 979. To succeed on a lack of informed consent action, the plaintiff must prove: (1) nondisclosure of required information; (2) actual damage; (3) resulting from the risks of which the patient was not informed; (4) cause in fact, which is to say that the plaintiff would have rejected the medical treatment if he or she had known the risk; and (5) that reasonable persons, if properly informed, would have rejected the proposed treatment. *Id.* at 979–80.

During his argument in support of judgment on the evidence, Dr. Thompson referenced "a medical negligence case" and argued that none of the experts said "any particular breach of the standard of care caused the harm which is alleged here which is death." Tr. p. 1005. In renewing the motion for judgment on the evidence at the close of his case, Dr. Thompson again argued there was no expert testimony that

2. Dr. Thompson likens the inconsistencies at issue here to a case in which a party, in response to a motion for summary judgment, issued an affidavit contradicting his sworn deposition testimony without any explanation. *See Gaboury v. Ireland Road Grace Brethren, Inc.* 446 N.E.2d 1310, 1314 (Ind.1983). There our supreme court concluded that issues of fact should not be created in this manner and held that "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant." *Id.* (quotation omitted). *Gaboury* does not apply to the facts before us today.

he failed to do something that proximately caused the death.

The Appellees claim that Dr. Thompson did not move for judgment on the evidence on the informed consent claim and argue that it may not be raised for the first time on appeal. Dr. Thompson does not respond to this argument in his reply brief, and our review of the transcript supports the Appellees' contention.

■■■ "Issues not raised at the trial court are waived on appeal." *Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind.2006). To properly preserve an issue on appeal, a party must, at a minimum, show that it gave the trial court a bona fide opportunity to pass upon the merits of the claim before seeking an opinion on appeal. *Id.* Because Dr. Thompson did not specifically request judgment on the evidence on the issue of informed consent, the issue is not available for appellate review. *Henri v. Curto*, 908 N.E.2d 196, 208 (Ind.2009) (finding challenge to sufficiency of the evidence supporting a jury's civil damage verdict was procedurally defaulted where party did not present the issue in a motion for judgment on the evidence or motion to correct error).

## II. Alleged Juror Bias

Dr. Thompson asserts that Juror Odam's failure to disclose an alleged bias against physicians was juror misconduct, requiring a new trial. In the alternative, Dr. Thompson argues that the trial court's refusal to conduct a hearing outside the presence of the jury in which he could question Juror Odam to determine the extent of her alleged bias is grounds for a new trial.

■■■ A trial court has discretion to grant or deny challenges for cause. *Merritt v. Evansville–Vanderburgh School Corp.*, 765 N.E.2d 1232, 1235 (Ind.2002).

A trial court's decision is sustained on appeal unless it is illogical or arbitrary. *Id.* "When a juror serves who should have been removed for cause, the complaining party is entitled to a new trial, absent waiver." *Id.* "In both civil and criminal cases the parties shall make all challenges for cause before the jury is sworn to try the case, or upon a showing of good cause for the delay, before the jury retires to deliberate." Ind. Jury Rule 17(a). The trial court shall sustain a challenge for cause if the prospective juror is biased or prejudiced for or against a party to the case. J.R. 17(a)(8).

Here, the trial court initially explained to the prospective jurors:

each side has an opportunity to ask you questions. And so what you have just done is swear that you will answer those questions truthfully. So each side will ask you either individually or collectively different questions.... Each side has the right to make sure that the jury that they have for the case is not biased or prejudiced.

Tr. p. 60. Dr. Thompson posed a series of questions regarding possible bias to the panel of prospective jurors, including Juror Odam, collectively. Dr. Thompson asked:

I just want to know from everybody; does anybody have any life experiences that they have that might make them have more difficulty in being fair and impartial to Dr. Thompson simply because he is a physician. Any negative experiences with physicians by you and your close family members; anybody: Has anybody ever sued a physician?

*Id.* at 205. Juror Odam did not respond to this line of questioning, and Dr. Thompson did not individually question Juror Odam. Immediately after she was selected as a juror, the following exchange took place between juror Odam and the trial court:

Juror Odam: I would like to say something. He asked everybody else if they would have a problem.

The Court: Okay.

Juror Odam: And I will.

The Court: Okay.

Juror Odam: Because of being a widow myself and trying to go after the doctor for negligence, he didn't ask me. I have a; I am going to have a hard—

The Court: Okay, well be that as it may, our system is an adversary system where people ask questions on both sides and we go accordingly, so you will be instructed on Monday morning to be a good juror, and I am sure you will be. . . .

*Id.* at 229.

■■■■■■ "Generally, proof that a juror was biased against the defendant or lied on voir dire entitles the defendant to a new trial." *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988). To warrant a new trial, there must be a showing that the misconduct was gross, and that it probably harmed the defendant. *Id.*; *see also* Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). "The issue of juror misconduct is a matter within the trial court's discretion." *Lopez*, 527 N.E.2d at 1130.

■■■■ Dr. Thompson equates Juror Odam's silence during the collective questioning with "concealment." Appellant's Br. p. 22. He characterizes Juror Odam's actions as juror misconduct and asserts he is entitled to new trial. *See Pearcy v. Michigan Mut. Life Ins. Co.*, 111 Ind. 59, 62, 12 N.E. 98, 100–01 (1887) ("A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct is prejudicial

to the party, for it impairs his right to challenge."). Juror Odam, however, did ultimately disclose the possibility of bias on her part. Based on this record, we are not convinced that Juror Odam's silence can be equated with "concealment" of a bias against physicians and juror misconduct as a matter of law.

■■■■ Our analysis does not end there, however. We believe that Juror Odam's silence when taken with her subsequent statement to the trial court was specific, substantial evidence showing a juror was possibly biased. *See Lopez*, 527 N.E.2d at 1130. Dr. Thompson brought this issue to the trial court's attention in a timely manner. *See* J.R. 17(a). At that point, it was incumbent upon the trial court to conduct a hearing, out of the presence of the remainder of the jury, to determine: (1) whether Juror Odam's silence indicated bias or lack of disinterest; and (2) whether the hearing itself has created a bias in the juror. *See Stevens*, 265 Ind. 396, 403, 354 N.E.2d 727, 732 (1976). The court should then have allowed Dr. Thompson to challenge Juror Odam for cause, and should have excused her and declared a mistrial if bias was found to be present. *See id.*, 354 N.E.2d at 732.

The trial court did not follow this protocol; instead, it denied Dr. Thompson's motions to strike, for a hearing, and for a mistrial based on its previous, albeit extensive, experience conducting jury trials. Although the trial court's rulings on these motions was a matter of discretion, the trial court was not permitted to disregard the established procedure or the distinct possibility of juror bias based on Juror Odam's own belated statement. The trial court erred by not conducting a hearing to address Juror Odam's alleged bias.

■■■■ The Appellees argue that Dr. Thompson waived the error because he

failed to expose the alleged bias during his voir dire examination. They contend that Dr. Thompson provides no legal authority for the proposition that Juror Odam was required to take proactive steps to answer questions never asked directly to her, and they assert that Dr. Thompson "must live with the inadequacies of his voir dire examination." Appellees' Br. p. 20.

■ It is common practice in Indiana to question prospective jurors collectively, and the trial court here instructed prospective jurors that they would be questioned individually or collectively. "It is the duty of each juror to answer all questions on voir dire fully and truthfully." *McFarland v. State*, 271 Ind. 105, 110, 390 N.E.2d 989, 992 (1979). We see no reason why a prospective juror's obligation to answer all questions truthfully applies with less force to questions posed the panel as a whole. Dr. Thompson did not waive the issue by questioning the panel collectively and not individually questioning Juror Odam where she gave no indication that follow-up questioning was necessary.

■ Likewise, we reject the Appellees' claim that, to preserve the issue, Dr. Thompson was required to use his remaining peremptory challenge to strike Juror Odam. In Indiana, "a claim of error arising from denial of a challenge for cause is waived unless the appellant used any remaining peremptory challenges to remove the challenged juror or jurors." *Merritt*, 765 N.E.2d at 1235. We cannot conclude, however, that the exhaustion rule requires a party to use an available peremptory challenge to correct an erroneous denial of a challenge for cause when a claim of bias arises after the jury has been selected. Based on Juror Odam's silence during the collective questioning, Dr. Thompson had no reason to move to strike her, either for cause or by peremptory challenge, during the selection process. The Appellees' reliance on the exhaustion rule is misplaced.

Under these circumstances, we believe a new trial is warranted. In *Barnes v. State*, 263 Ind. 320, 330 N.E.2d 743 (1975), our supreme court addressed an allegation that the defendant was prejudiced by the inaccurate voir dire answers regarding a juror who was married to a second cousin of a member of the prosecutor's staff. Notwithstanding affidavits indicating that the staff member was not aware of the relationship at the time of trial and had not seen or heard from his cousin in eleven years, the court observed that the possibility of bias existed. *Barnes*, 263 Ind. at 325, 330 N.E.2d at 747. The court stated:

> If the juror lied, his misconduct was ground for a new trial. If the answer was inaccurate, it prevented the defendant from investigating a possible source of future bias in favor of the prosecution. Even though the juror may not have been aware at the time of the voir dire question of his relationship, if at any time prior to the verdict he discovered such a fact; the possibility of bias existed. In such a situation the defendant would need to have the opportunity to probe the juror and, if he chose, to challenge for cause. Of course, if throughout the trial the juror never knew of the relationship there would be no error since the relationship could not have influenced his decision.

Therefore, we must remand this case to the trial court for an evidentiary hearing for a determination of the following questions:

> (1) During voir dire was the juror aware of his relationship to the member of the prosecutor's staff?
> (2) At any time prior to the verdict, did the juror become aware of his relationship to the member of the prosecutor's staff?

If either of these questions are found to require an affirmative answer, grounds for challenge for cause will have been

shown to have existed, and a new trial must be ordered.

*Id.* at 325–26, 330 N.E.2d at 747 (citation omitted).

The *Barnes* court posed two specific questions to be addressed on remand. Both questions required an objective assessment of what the juror knew and when he knew it. In that regard, the issue before us today is distinguishable from *Barnes.* Whether Juror Odam's silence amounted to misconduct and whether she was in fact biased against physicians requires a more subjective assessment of the circumstances. We believe it would be difficult to assess the allegations many months after trial, and neither party requests the matter be remanded for an evidentiary hearing. Accordingly, the proper recourse is a new trial. *See Merritt* 765 N.E.2d at 1237 (avoiding slippery slope of a case-sensitive analysis of whether the defendant used his peremptory challenges reasonably, or whether that juror's bias resulted in actual, not just potential, prejudice to the defendant and adopting a brightline rule: "If on appeal you then prove both the erroneous denial and that you were unable to strike another objectionable juror because you exhausted your peremptories, you are entitled to a new trial....").

### Conclusion

Although the trial court properly denied Dr. Thompson's motion for judgment on the evidence, the allegations of juror misconduct and bias require a new trial. We affirm in part, reverse in part, and remand for a new trial.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and VAIDIK, J., concur.