Tammy L. HAYNES and Robert
Haynes, Appellants,

v.

Anna B. BECEIRO, M.D., Appellee.

No. 04–06–00099–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 1, 2006.

Jeffrey C. Anderson, Jessica L. Lambert, Law Office of Jeffrey C. Anderson, San Antonio, for appellants.

M. Kenneth Patterson, Matthew M. Edwards, Patterson and Wagner, L.L.P., San Antonio, for appellee.

Sitting: SANDEE BRYAN MARION, Justice PHYLIS J. SPEEDLIN, Justice REBECCA, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from the denial of appellants' motion for summary judgment and the granting of appellee's motion for summary judgment.

## BACKGROUND

When Tammy Haynes became pregnant with her second child, she sought prenatal care from Peter Kuhl, M.D. Kuhl delivered Tammy's second child at Methodist Hospital. Following the birth, Tammy experienced periodic episodes of heavy vaginal bleeding. Kuhl diagnosed her as suffering from endometriosis, and recommended elective surgery consisting of a total abdominal hysterectomy and a bilateral salpingo-oophorectomy. After discussing the recommendation with her husband, Robert Haynes, Tammy agreed to the procedures and specifically requested that Kuhl be her surgeon. Kuhl agreed to be Tammy's surgeon, but he informed her that he would probably be assisted during surgery by another doctor in his group, Dr. Anna Beceiro. Surgery was scheduled for March 7, 2002.

On March 4, 2002, Tammy spoke with someone in Kuhl's office regarding her insurance benefits. She was told that Kuhl was not a designated physician in her insurance network; therefore, her insurance company would probably not pay his surgery fee. Tammy was advised that one of the other surgeons in Kuhl's group, who was a designated physician in the network, could perform the surgery and Kuhl would be present and assist. Tammy declined this option and stated she did not want another doctor to perform the surgery. In Progress Notes, taken by Kuhl's office, there is the following notation: "She does not want to see anyone else—or have anyone else do surgery." This sentence is underlined in the Notes.

On the morning of March 7, when Tammy arrived at the hospital, she signed a Disclosure and Consent form. The form stated, "I (we) voluntarily request Dr. Peter Kuhl as my physician, and such associates, technical assistants and other health care providers as they may deem necessary to treat my condition...." Tammy contends she never met Beceiro at any time before her surgery. Beceiro, on the other hand, contends she met Tammy briefly in the holding area before the surgery began, and she told Tammy she would be assisting Kuhl with the surgery. Both Kuhl and Beceiro performed the surgery, during which both of Tammy's ureters were tied off, her bladder was lacerated with a three to four centimeter hole, and a kidney was obstructed. A subsequent surgery was required to correct these injuries.

In 2003, Tammy and Robert (collectively, "appellants") sued Kuhl, Beceiro, and Methodist Hospital. In their Sixth Amended Petition, only Beceiro remained as a defendant, with appellants asserting negligence in the performance of the surgery, as well as allegations that Beceiro (1) failed to obtain Tammy's consent to perform surgery; (2) intentionally or negligently withheld from appellants the fact that Beceiro would actually be performing surgery, as opposed to merely assisting Kuhl; (3) intentionally or negligently misinformed appellants that Beceiro would only "assist" Kuhl, although Beceiro knew she would actually be performing surgery; and (4) intentionally or negligently committed a medical battery on Tammy by performing surgery without Tammy's consent and in the absence of a medical or surgical emergency.

Both appellants and Beceiro filed motions for summary judgment that were denied. Appellants later filed a second motion for both a traditional summary judgment and a no-evidence summary judgment, incorporating by reference their first motion for summary judgment. In this motion, appellants moved for a partial summary judgment on the grounds that Beceiro committed medical battery because Beceiro did not have Tammy's con-

sent to perform the surgery. Beceiro filed a response and her own motion for summary judgment, all in the same pleading, incorporating by reference her first motion for summary judgment and her response to appellants' first motion for summary judgment. The parties disagree on whether Beceiro moved for summary judgment on appellants' medical battery claim; however, our review of the pleadings reveal that Beceiro's pleading sufficiently stated her argument that Tammy's consent entitled Beceiro to summary judgment on appellants' battery claim.

The trial court denied appellants' motion, granted Beceiro's motion as to the battery and fraud claims, and denied Beceiro's motion as to the negligence claims. About a month before the summary judgment was signed, appellants filed their Seventh Amended Petition in which they dropped allegations regarding any negligence in the performance of the surgery. Accordingly, Beceiro filed a motion for entry of final judgment, arguing that a final judgment could now be entered because the Seventh Amended Petition contained no allegations of negligence. The trial court signed a final judgment, dismissing appellants' case with prejudice.

On appeal, appellants assert the trial court erred in rendering summary judgment on their battery and fraud claims.

## BATTERY

 "Medical treatment will not constitute a battery unless it is provided without the patient's consent." *Murphy v. Russell,* 167 S.W.3d 835, 838 (Tex.2005) (per curiam); *see also Miller v. HCA, Inc.,* 118 S.W.3d 758, 767 (Tex.2003); *Baribeau v. Gustafson,* 107 S.W.3d 52, 61 (Tex.App.-San Antonio 2003, pet. denied) (holding that "[b]attery in the health care context generally involves claims that a doctor performed acts on the patient without consent.""). Beceiro asserts she had Tammy's consent to perform surgery based upon the Disclosure and Consent form signed by Tammy, which stated in part: "I (we) voluntarily request Dr. Peter Kuhl as my physician, and such associates, technical assistants and other health care providers as they may deem necessary, to treat my condition which has been explained to me as: Endometriosis."

Appellants do not dispute they knew Beceiro was scheduled to assist Kuhl. In her affidavit, Tammy admitted Kuhl "informed [her] he would probably be assisted during the surgery by another doctor in the group, who he thought would probably be Dr. Anna Beceiro." Nor do appellants complain about any part of the surgery on which Beceiro merely assisted Kuhl. Instead, appellants argue that Beceiro did more than merely assist Kuhl when she performed "the left side of the hysterectomy and oophorectomy ..." The premise of appellants' argument is that the Disclosure and Consent form named only Kuhl as Tammy's surgeon, and Tammy at no time gave her consent for Beceiro to be her surgeon. Appellants argue that because Beceiro actually performed one-half of the surgery, she had a duty to obtain Tammy's written consent; and because Beceiro did not obtain Tammy's consent to perform surgery, the surgery constituted medical battery. Appellants' argument relies on their contention that the word "associate" in the Disclosure and Consent form does not include physicians, surgeons, or assistant surgeons. We disagree with this argument.

The word "associate" is not among the defined terms in the Medical Liability and Insurance Improvement Act; therefore, we give the word its common meaning. *See Heritage Resources, Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996) (words and phrases in agreements should

be given their ordinary, plain, and common meaning); *see also* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005) (words not defined in a statute are given their plain meaning, read in context, and construed according to the rules of grammar and common usage.). Webster's Dictionary defines "associate" to mean "one associated with another: as a partner, [or] colleague." Webster's Ninth New Collegiate Dictionary 110 (1983). Because the terms used in the Disclosure and Consent form in this case are not ambiguous, we may construe the form as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."). Accordingly, we construe the phrase "such associates" as used in the Disclosure and Consent form to include other physicians and surgeons as deemed necessary by the surgeon named in the form. Therefore, when Tammy gave her written consent for Kuhl "and such associates" to perform the surgery specified in the Disclosure and Consent form, she consented to Beceiro performing any part of that surgery "they [Kuhl] may deem necessary, to treat [her] condition. . . ."

## FRAUD

In Beceiro's motion for summary judgment on appellants' fraud claim, she relied on Tammy's assertion that Beceiro never spoke to her prior to surgery. Beceiro argued that because Tammy denied the existence of any representation—or any conversation at all—there was no misrepresentation, no reliance, and no intent to defraud on Beceiro's part. Under traditional summary judgment standards,[1] a party moving for summary judgment has the burden of establishing as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Once the movant has established a right to summary judgment, the burden shifts to the respondent to present evidence that would raise a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Reyes v. Credit Based Asset Servicing and Securitization,* 190 S.W.3d 736, 738 (Tex. App.-San Antonio 2005, no pet.). Beceiro challenged the elements of misrepresentation, reliance and intent.[2]

In appellants' motion for summary judgment, Tammy denied ever meeting Beceiro prior to surgery. As grounds for her own motion for summary judgment, Beceiro relied on appellants' contentions that they never spoke to her prior to surgery as establishing her right to summary judgment as a matter of law. In appellants' reply to Beceiro's motion for summary

1. Beceiro's motion did not specify which type of summary judgment she sought; however, she set forth the traditional summary judgment standard claiming there were no issues of material fact and she was entitled to judgment as a matter of law. Therefore, we do not construe her motion as seeking a no-evidence summary judgment.

2. The elements of fraud are: (1) a material misrepresentation or omission when there is a duty to speak, (2) when the defendant knew the statement was false or made the statement recklessly without any knowledge of its truth, (3) the defendant intended the plaintiff to rely upon the statement, and (4) that the plaintiff relies upon the statement (5) to his detriment. *See Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977); *Harrison v. Bass Enter. Prod. Co.,* 888 S.W.2d 532, 536 (Tex. App.-Corpus Christi 1994, no writ). Beceiro did not challenge the existence of a "duty to speak."

judgment, appellants reiterated that Beceiro did not speak to either of them prior to the surgery; however, they argued that if the jury finds that Beceiro told Tammy, prior to surgery, that she would be assisting Kuhl, then Beceiro committed a fraudulent act by concealing from Tammy that Beceiro would actually perform some or all of the surgery.

Tammy's statement that she never spoke to Beceiro prior to the surgery satisfied Beceiro's burden of establishing no genuine issue of material fact existed as to the misrepresentation element of the appellants' fraud cause of action. The burden then shifted to appellants to raise a genuine issue of material fact on whether Beceiro made or failed to make certain representations to them prior to surgery. Appellants point to no statements they allege Beceiro made prior to surgery. Instead, they assert that because the jury *might* believe Beceiro's statement that she spoke to Tammy prior to surgery, a fact issue exists. Speculation that the jury might disbelieve their adamant claim that Beceiro never spoke to them prior to surgery did not satisfy their burden to raise a genuine issue of material fact on the challenged element. Therefore, Beceiro was entitled to summary judgment as a matter of law on appellants' fraud claim.

## CONCLUSION

We affirm the trial court's judgment.