# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MORRIS L. KLAPPER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**LAURA K. BINFORD**
**JAMES O. GIFFIN**
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRENDA K. TIPTON, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1311-CT-541 |
| | ) | |
| MARGARET ISAACS, M.D., ST. VINCENT | ) | |
| HOSPITAL AND HEALTHCARE | ) | |
| CENTER, a/k/a ASCENSION HEALTH, | ) | |
| CHRISTINA FRANCIS, M.D., and | ) | |
| JAMES R. MINOR, M.D., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather Welch, Judge
Cause No. 49D12-1112-CT-49101

**September 5, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Brenda K. Tipton appeals summary judgment for various healthcare providers she sued after her hysterectomy. As the consent form Tipton signed is determinative of all issues she raises on appeal, we affirm.

## FACTS AND PROCEDURAL HISTORY

Tipton became a patient at St. Vincent Hospital Family Practice and OB/GYN Residency Clinic ("the Clinic") in 2004. On three occasions, once in 2004 and twice in 2007, she was informed the Clinic was a residency program and that:

> Residents are medical doctors who have graduated from medical school and are receiving specialty training in the fields of . . . Women's Health . . . . Staff doctors oversee the care provided by the resident doctor. Every case is discussed with a staff doctor and the staff doctor may see or examine the patient as well.

(App. at 276.)

Dr. Margaret Isaacs, a resident, first examined Tipton at the clinic in March 2008. In July 2008, Dr. Isaacs and another doctor operated on Tipton, and the surgical findings indicated Tipton had an increased risk of developing cervical cancer. Tipton was advised of several options, and she decided to undergo a hysterectomy.

On September 25, 2008, the day of the hysterectomy at St. Vincent Hospital ("the Hospital"), Tipton signed a "Consent to Surgery or Other Medical Procedure," (*id*. at 218), that explicitly authorized Dr. Isaacs[1] "and such assistants as may be selected by him or her to perform the . . . [t]otal abdominal hysterectomy." (*Id*.) She consented to "the presence, in

---

[1] Tipton states in her brief that "the consent form mentions only the name of Dr. Isaacs." (Appellant's Br. at 4.) While Tipton is correct that no other name is mentioned, the form is explicit that Tipton was consenting to the presence and participation of other people.

2

the procedure room, of residents, interns, approved observers, students, and pharmacy, supply and equipment vendors who will witness and support the procedure being performed on me," (*id*.), and to "the participation of medical, nursing, other health care students, residents, and interns in the procedure being performed on me. These individuals will participate under the direct supervision of my physician." (*Id*.)

Dr. Isaacs, a resident, performed most of the surgery. She was present in the operating room during all of the surgery. Another resident, Dr. Christina Francis, performed the hysterectomy on one side of Tipton's body but did not participate in the operation on the other side, or in the opening or closing procedures. Dr. James Minor supervised both residents. He was present for and assisted in the entire procedure. On October 1, Tipton was readmitted to the Hospital and on October 5 she underwent further surgery because of wound drainage and swelling.

Tipton brought a medical malpractice complaint against the Hospital and Doctors Isaacs, Francis, and Minor (collectively, "the doctors") after completion of medical review panel proceedings. She alleged (1) the "failure of Dr. Francis to obtain any consent at all before performing surgery on [Tipton] was a battery," (*id*. at 62), (2) the Hospital and each of the doctors had a duty to obtain her informed consent for the surgery, including "disclosure of the identities and qualifications of all physicians involved in performing the procedure, and the fact that Doctors Isaacs and Francis were still in training, (*id*. at 63), and (3) Doctors Francis, Isaacs, and Minor were liable for "actual or constructive fraud or deceit," (*id*.), because Dr. Francis entered the operating room, performed surgery, and left while Tipton

3

was unconscious, "intentionally depriving her of the opportunity to be advised of or object to Dr. Francis performing surgery on her," (*id*. at 64), and the other two doctors knowingly allowed Dr. Francis to do so and they did not tell Tipton in advance that Dr. Francis would be performing part of the surgery.

The trial court granted summary judgment for the defendants on all three counts.

## DISCUSSION AND DECISION

When a grant or denial of summary judgment is challenged on appeal, the procedure and standard under Indiana law is clear. Our standard of review is the same as it is for the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). The moving party bears the initial burden to make a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with evidence establishing there is a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* An appellate court reviewing a challenged trial court summary judgment ruling is limited to the evidence designated before the trial court, *see* Ind. Trial Rule 56(H), but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *Id.* We will reverse if the law has been incorrectly applied to the facts; otherwise, we will affirm a summary judgment on any theory supported by evidence in the record. *Id.* We are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Id.*

4

1.    Informed Consent

As Tipton consented to Dr. Francis' participation in her surgery, summary judgment on Tipton's informed consent count was not error. Lack of informed consent is a distinct theory of liability. *Spar v. Cha*, 907 N.E.2d 974, 979 (Ind. 2009). Lack of informed consent to a harmful touching in medical malpractice cases was traditionally viewed as a battery claim. More recently, unless there is a complete lack of consent, the theory is regarded as a specific form of negligence for breach of the required standard of professional conduct.[2] *Id*. Lack of informed consent is premised on the physician's duty to disclose to the patient material facts relevant to the patient's decision about treatment. *Id*.

> To succeed in a lack of informed consent action, a plaintiff must prove
>
> (1) nondisclosure of required information; (2) actual damage . . . (3) resulting from the risks of which the patient was not informed; (4) cause in fact, which is to say that the plaintiff would have rejected the medical treatment if she had known the risk; and (5) that reasonable persons, if properly informed, would have rejected the proposed treatment.

*Id*. at 980. As Tipton did not prove there was "nondisclosure of required information," summary judgment for the healthcare providers was not error.

In *Rumple v. Bloomington Hosp.*, 422 N.E.2d 1309 (Ind. Ct. App. 1981), *trans. denied*, Rumple claimed he was not informed that he would be billed for radiological services provided to his son. Rumple signed a consent form that read in pertinent part:

> 2. I hereby authorize and direct the above-named surgeon and/or his associates to provide such additional services for me as he or they may deem reasonable and necessary, including, but not limited to, the administration and maintenance of the anesthesia, and the performance of services involving

_____

[2]  As there was not a complete lack of consent in the case before us, we need not conduct a battery analysis.

5

pathology and radiology, and I hereby consent thereto.

3. I understand that the above-named surgeon and his associates or assistants will be occupied solely with performing such operation, and the persons in attendance at such operation for the purpose of administering anesthesia, and the person or persons performing services involving pathology and radiology, are not the agents, servants or employees of Bloomington Hospital nor of any surgeon, but are independent contractors and as such are the agents, servants, or employees of myself.

*Id*. at 1312.

Rumple argued that he understood the consent form to authorize only treatment necessary for setting his son's wrist and that aside from very general language in the form, there was no discussion of radiology. Rumple argued that from the consent form, the hospital "assumed the discretion to impose unauthorized services" on him in violation of the doctrine of informed consent.

We determined the doctrine of informed consent did not apply because:

The issue in informed consent is whether the patient was subjected to the inherent risks of the proposed treatment without being permitted to intelligently reject or accept treatment. The doctrine of informed consent usually arises in a situation where a physician failed to fulfill his or her duty to inform the patient of the risks of proposed treatment or where the physician was liable for treatment of the patient beyond that which was authorized. Neither of those situations are present in the case at bar.

*Id*. at 1212 (internal quotation omitted). Nor does Tipton make such allegations.

But assuming *arguendo* the doctrine of informed consent applies to Tipton's case, we find she consented to the participation of Dr. Francis and others in her surgery. Rumple, as does Tipton in the case before us, alleged the consent form was a contract of adhesion and thus was void. He noted the form was a standardized form that was presented to him by a

6

party with greater bargaining power, and there was no bargaining between the parties as to its contents; rather, if he wanted medical treatment for his son, then he had to sign the form as presented. This lack of negotiation, he argued, made the contract unenforceable.

We determined it was not, first noting a standardized contract is not unenforceable just because of the unequal bargaining power of the parties. *Id*. at 1313. "There must also be a showing that the contract is unconscionable, *i.e.*, one which contains unreasonable or unknown terms and is the product of inequality of bargaining power." *Id*. Rumple did not make such a showing, nor has Tipton. Rumple read the consent form at the time he signed it and acknowledged at trial that he understood its terms. Tipton directs us to no evidence she did not read or understand the form she signed.

We found the terms of Rumple's consent were not unreasonable, as it allowed doctors to perform necessary and reasonable medical services and did not allow them to perform unnecessary medical services. *Id*. Consent to allow the performance of reasonable and necessary medical treatment is not unconscionable: "An 'unconscionable contract' has been defined to be such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Id*. (quoting *Weaver v. Am. Oil Co.*, 257 Ind. 458, 462, 276 N.E.2d 144, 146 (1971)). We decline to hold Tipton's consent to allow "assistants as may be selected by [Dr. Isaacs] to perform the . . . [t]otal abdominal hysterectomy" and "the participation of medical, nursing, other health care students, residents, and interns in the procedure being performed on me," (App. at 218), is an agreement "no sensible man not under delusion, duress or in distress would make, and such

7

as no honest and fair man would accept." As Tipton consented to Dr. Francis' participation in the surgery, summary judgment on her informed consent claim was appropriate.

Neither party directs us to Indiana decisions that specifically address Tipton's situation, *i.e.*, the validity of a consent to the participation of unnamed doctors or other health care providers, but we find decisions from other jurisdictions instructive. In *Haynes v. Beceiro*, 219 S.W.3d 24 (Tex. App. San Antonio 2006), *review denied*, the language of Haynes' consent was almost identical to Tipton's: "I (we) voluntarily request Dr. Peter Kuhl as my physician, and such associates, technical assistants and other health care providers as they [sic] may deem necessary, to treat my condition which has been explained to me as: Endometriosis." *Id*. at 26. The *Haynes* court determined that when Haynes gave written consent for her doctor and "such associates" to perform the surgery specified in the disclosure and consent form, she consented to another surgeon performing part of surgery, and that precluded her medical battery claim. *Id*. at 27.

Haynes' argument, like Tipton's, was that the consent form named only one person as the surgeon, and the patient never gave consent for someone else to be her surgeon. Haynes argued that because Dr. Beceiro performed one-half of the surgery, she had a duty to obtain Haynes' consent; and, because Dr. Beceiro did not, the surgery was medical battery. Haynes' argument relied on the premise that the word "associate" in the Disclosure and Consent form did not include physicians, surgeons, or assistant surgeons.

The *Haynes* court disagreed, noting words and phrases in agreements should be given their ordinary, plain, and common meaning, and the dictionary definition of "associate" is

8

"one associated with another: as a partner, [or] colleague." *Id*. at 27 (quoting Webster's Ninth New Collegiate Dictionary 110 (1983)). Because the terms used in the consent form were not ambiguous, it construed the form as a matter of law, and construed the phrase "such associates" to

> include other physicians and surgeons as deemed necessary by the surgeon named in the form. Therefore, when [Haynes] gave her written consent for the [named surgeon] "and such associates" to perform the surgery specified in the Disclosure and Consent form, she consented to Beceiro performing any part of that surgery "[the named surgeon] may deem necessary, to treat [her] condition."

*Id. And see generally* Robin Cheryl Miller, Annotation, *Recovery by Patient on whom Surgery or Other Treatment was Performed by One Other than Physician who Patient Believed would Perform it,* 39 A.L.R.4th 1034 (1985).

Similarly, when Tipton explicitly authorized Dr. Isaacs "and such assistants as may be selected by him or her to perform the . . . [t]otal abdominal hysterectomy" and consented to "the participation of medical, nursing, other health care students, residents, and interns in the procedure being performed on me. These individuals will participate under the direct supervision of my physician," (App. at 218), she consented to Dr. Francis performing any part of her surgery. Summary judgment for the healthcare providers was not error.

2. Constructive Fraud and Deceit

Nor was summary judgment for the health care providers error on Tipton's constructive fraud count. Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, even if

9

there is no evidence of actual intent to defraud. *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. The elements of constructive fraud are: 1) a duty owing by the party to be charged to the complaining party due to their relationship; 2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts, or by remaining silent when a duty to speak exists; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

As the designated evidence does not demonstrate the health care providers made deceptive material misrepresentations of past or existing facts, nor is there evidence suggesting they remained silent when a duty to speak existed, summary judgment for the health care providers was not error.

Neither party directs us to Indiana authority specifically addressing whether, in a situation like the one before us, there can be a deceptive material misrepresentation of past or existing facts or whether, in light of consent like that Tipton provided, health care providers have remained silent when a duty to speak existed. Those questions have been addressed in other jurisdictions, and we find instructive *Bowlin v. Duke University*, 423 S.E.2d 320 (N.C. Ct. App. 1992), *review denied*.

Bowlin's physician did not specifically inform her that a fourth-year medical student would be participating in her bone marrow harvest procedure. Bowlin, like Tipton, knew the facility where her procedure would be performed was a teaching institution, and that

10

students, nurses, and allied health personnel might assist in providing care. Like Tipton, she signed a consent form that included a statement that she agreed medical students could assist in providing her care.

The *Bowlin* court determined the doctor had no duty to inform Bowlin of the qualifications of all surgical assistants:

> [Bowlin] contends [her doctor] should have informed her of any health care provider who would assist him in the bone marrow harvest procedure and their levels of expertise. There is, however, no statutory or common law duty for an attending surgeon to inform a patient of the particular qualifications of individuals who will be assisting, and the consent given by [Bowlin] defeats this argument.

*Id*. at 323. Therefore, the doctor's failure to reveal the assistant's status as an unlicensed student was not constructive fraud. *Id*. at 324.

We find the *Bowlin* reasoning persuasive. In light of Tipton's consent, we cannot say Tipton's healthcare providers remained silent when they had a duty to speak or that they made a deceptive material misrepresentation of past or existing facts. The providers were therefore entitled to summary judgment on her constructive fraud claim.

## CONCLUSION

Tipton consented to Dr. Francis' participation in her surgery, and Tipton's healthcare providers did not make a deceptive material misrepresentation of past or existing facts or remain silent when they had a duty to speak. We accordingly affirm the summary judgment for the defendants.

11

Affirmed.

KIRSCH, J., and BAILEY, J., concur.