

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00334-CV

Paulette **BARIBEAU**,
Appellant

v.

**HILL COUNTRY PARTNERS, L.P.**,
Appellee

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-08378
Honorable Michael E. Mery, Judge Presiding

Opinion by:      Patricia O. Alvarez, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Irene Rios, Justice

Delivered and Filed: July 10, 2019

AFFIRMED

Appellant Paulette Baribeau ("Baribeau") appeals from a judgment rendered on a directed

verdict in a suit for breach of a commercial lease agreement. We affirm the trial court's judgment.

### Background

Appellee Hill Country Partners, L.P. ("Hill Country") owns a shopping center in Castle

Hills. On January 9, 2012, Baribeau and her business partner Danny Lara signed an agreement to

lease Suite 127 of Hill Country's shopping center ("the Original Lease"). The Original Lease

defines "Tenant" as "Danny Lara and Paulette Baribeau, to be assign[ed] to an LLC to be formed,"

and permits the tenant to operate a gym business in Suite 127 beginning May 1, 2012. Baribeau, Lara, and Hill Country's vice president are the only signatories to the Original Lease, which was admitted at trial without objection.

Although the parties dispute what prompted the decision to do so, an amendment to the Original Lease was signed in March 2012 ("the First Amendment"). The First Amendment modifies the definition of "Tenant" to read: "Sherry Denise Lara, Paulette Baribeau and John Cordova, to be assigned to an LLC to be formed." Sherry Lara is Danny Lara's wife. John Cordova previously operated a gym business in another suite in Hill Country's shopping center. Under the First Amendment, Danny Lara was removed from the definition of "Tenant" but remained a guarantor for the tenant's obligations. No one disputes that Hill Country, Baribeau, Danny and Sherry Lara, and Cordova each signed the First Amendment.

Baribeau, Sherry Lara, and Cordova subsequently formed a limited liability company to operate the gym. After a dispute arose among them, Baribeau and Sherry Lara sued Cordova. The lawsuit eventually settled, "conditioned on the satisfactory resolution with [Hill Country]" of a finish-out advance for Suite 127 and "Cordova's release from the lease and approval of [a] new lease by the new Landlord." The parties requested that Hill Country agree to a second amendment removing Cordova and the Laras from the lease and identifying Baribeau as the sole tenant and guarantor.

On January 18, 2013, Hill Country, Baribeau, Cordova, and the Laras signed a second amendment to the Original Lease ("the Second Amendment"). The Second Amendment contains a "Ratification of Lease" provision, in which Baribeau agrees to "ratify, confirm, and adopt the Lease[1], as amended by the Second Amendment," as well as a "Ratification of Guaranty" provision.

---

[1] "Lease" is defined as the Original Lease, as amended by the First Amendment.

"Tenant" was redefined as "Paulette Baribeau" only, and Hill Country agreed to lease additional space to Baribeau and pay Baribeau $100,000 as a finish-out allowance. The Second Amendment also contains a "Release of Landlord" provision stating:

> As a material consideration of this Agreement to [Hill Country], but for which [Hill Country] would not enter into this Second Amendment, Baribeau, [Sherry] Lara, Cordova, and [Danny] Lara hereby release and discharge [Hill Country] of and from any and all claims, demands, and/or causes of action held by any of them against [Hill Country], its principals, partners, employees, representatives, consultants, successors and assigns, whether known or unknown, choate or inchoate, for all periods prior to [January 9, 2013], including, without limitation, any and all such claims based upon or arising from, whether in whole or in part, the negotiation, formation, performance and/or non-performance of the Lease, as amended by this Second Amendment.

Baribeau was represented by counsel when she signed the Second Amendment.

After signing the Second Amendment, Baribeau made full rent payments for six months and partial rent payments thereafter. In October 2015, Baribeau ceased operating the gym business and making rent payments to Hill Country. Hill Country filed this lawsuit for breach of the Original Lease as amended. Baribeau answered and asserted counterclaims for, among other things, fraud and fraudulent inducement. Baribeau also raised fraud and fraudulent inducement as affirmative defenses.

The case proceeded to a jury trial. After both sides rested and closed, Hill Country moved for a directed verdict on its claims for breach of contract and attorney's fees, its defenses of release, ratification, and statute of limitations, and all of Baribeau's counterclaims and fraud-based defenses. The trial court granted the motion for directed verdict in full and rendered final judgment in Hill Country's favor. Baribeau appeals.

## Standard of Review

A trial court may enter a directed verdict in favor of a plaintiff where the evidence conclusively establishes the plaintiff's right to judgment as a matter of law. *See Ibarra v. Nat'l*

*Constr. Rentals, Inc.*, 199 S.W.3d 32, 37 (Tex. App.—San Antonio 2006, no pet.) (citing *Prudential Ins. Co. of. Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)). We review the granting of a directed verdict using the standard of review applicable to a challenge to the legal sufficiency of the evidence. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). Accordingly, we review the evidence to determine whether a reasonable and fair-minded jury could have reached the verdict under review. *See City of Keller*, 168 S.W.3d at 827. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* "[W]e can consider any reason the directed verdict should have been granted, even if not stated in the [plaintiff's] motion." *Ibarra*, 199 S.W.3d at 37.

### Discussion

In three issues, Baribeau argues the trial court erred in granting a directed verdict in Hill Country's favor. In her first and second issues, Baribeau argues the release and ratification provisions in the Second Amendment are not valid. In her third issue, Baribeau argues the trial court erred in granting a directed verdict because the evidence raised a fact question regarding Baribeau's fraud-based affirmative defenses.

### A.    Release

In its motion for directed verdict, Hill Country argued it conclusively proved its affirmative defenses of release and ratification. A release that is valid on its face is a complete bar to any action based on matters encompassed by the release. *Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 569 (Tex. App.—San Antonio 2004, no pet.).

In the Second Amendment, Baribeau expressly released Hill Country from "any and all claims, demands, and/or causes of action . . . including, without limitation, any and all such claims based upon or arising from, whether in whole or in part, the negotiation, formation, performance and/or non-performance of the Lease . . . ." In her first issue on appeal, Baribeau argues this release

is not valid because Hill Country "fraudulently induced Baribeau into the [O]riginal Lease." Baribeau argues that because the Original Lease was procured by fraud, "nothing that flows from that [O]riginal [L]ease," including the Second Amendment, "is valid."

Baribeau relies on the general rule that a release agreement, like any other contract, may be subject to avoidance if it was fraudulently induced. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997) (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990)). For instance, in *Schlumberger*, the supreme court held a settlement agreement containing a release of claims could be avoidable if the non-releasing party fraudulently induced the releasing party to sign the settlement agreement itself. *Id*. However, because the settlement agreement contained a provision in which the releasing party expressly disclaimed reliance upon any statements or representations of the non-releasing party, the court held the settlement agreement and release provision were enforceable. *Id.* at 181.

Here, in contrast, Baribeau does not allege any fraud in the inducement of the Second Amendment itself; rather, she argues the Original Lease was procured by fraud. Baribeau does not identify any authority for the premise that a release agreement may be avoidable because of fraudulent procurement of another separate agreement, particularly where the release agreement expressly releases any claims related to that separate agreement. Indeed, if such a rule existed, it would prevent parties to contractual disputes from fully and finally resolving those disputes by bargaining for and executing releases of claims arising from the prior contracts. *See id.* at 179 (noting the importance of this practice).

Further, even if Baribeau was not aware at the time she signed the Second Amendment of the potential fraudulent inducement claim arising from the Original Lease, the release provision expressly releases "any and all claims, demands, and/or causes of action . . . *whether known or unknown* . . . ." Parties to a release agreement need not anticipate and identify each potential cause

of action related to the release's subject matter, and a valid release may encompass as yet unknown claims. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000). Therefore, even if Baribeau was not aware of her potential claim for fraudulent inducement of the Original Lease, absent any alleged fraud in the procurement of the Second Amendment, she cannot avoid her agreement to release that unknown claim.

Accordingly, because Baribeau has not demonstrated the release contained in the Second Amendment is invalid, her first issue is overruled. In addition, because the trial court could have granted a directed verdict on all of Baribeau's counterclaims based on Hill Country's affirmative defense of release, we need not determine whether the ratification provisions in the Second Amendment are also a valid basis for the directed verdict on Baribeau's counterclaims. *See Ibarra*, 199 S.W.3d at 37. We, therefore, do not reach Baribeau's second issue.

**B.      Fraud defenses**

In her third issue, Baribeau argues the trial court erred in granting a directed verdict because the evidence regarding her fraud-based defenses was sufficient to raise a fact issue for the jury. To establish her common law fraud defense, Baribeau bore the burden of demonstrating: (1) Hill Country made a material misrepresentation or omission, (2) either with knowledge of its falsehood or recklessly without any knowledge of the truth, (3) with the intent that Baribeau act upon it, and (4) Baribeau acted on the misrepresentation to her detriment. *See BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 503 (Tex. App.—San Antonio 2013, pet. denied); *Haynes v. Beceiro*, 219 S.W.3d 24, 27 n.2 (Tex. App.—San Antonio 2006, pet. denied). Fraudulent inducement requires proof of the same elements in relation to a contract between the parties. *Zaffirini*, 419 S.W.3d at 505.

Baribeau argues the trial evidence demonstrates: (1) John Cordova "was on the [O]riginal Lease, or was supposed to be"; (2) Hill Country insisted that Cordova be added to the Original Lease by way of the First Amendment; and (3) "neither Baribeau nor Lara would have signed the

[O]riginal [L]ease had they known that Cordova was, or would become part of the lease." Although Baribeau does not specify which element(s) of her defenses are supported by the trial evidence she cites, we construe her briefing as alleging Hill Country made a material misrepresentation or omission by concealing that Cordova "was on the [O]riginal Lease, or was supposed to be." Baribeau relies exclusively on Cordova's deposition testimony that he signed the Original Lease at the same time Danny Lara and Baribeau signed it but was later told by Hill Country's commercial leasing agent that "we can't find the original one that you signed," "[s]o we're going to have to do an amendment to the lease to put you back in."

The evidence presented at trial, however, conclusively establishes Cordova did not sign the Original Lease. The Original Lease itself was admitted into evidence, without objection, and contains the signatures of Baribeau, Danny Lara, and Hill Country's vice president only. The Original Lease also clearly defines "Tenant" as Danny Lara and Baribeau only. In addition, Baribeau testified Cordova was not present on January 9, 2012 when she and Danny Lara signed the Original Lease, directly contradicting Cordova's testimony. No evidence was presented that Cordova signed a different or additional lease; rather, Cordova claimed he signed the same lease Baribeau and Danny Lara signed. Because all of the evidence in the record contradicts Cordova's deposition testimony that he signed or "was supposed" to sign the Original Lease, a reasonable factfinder could disregard it. *See City of Keller*, 168 S.W.3d at 827.

In addition, even assuming the evidence created a fact question as to whether Hill Country "insisted" that Cordova sign the First Amendment, this evidence is immaterial to whether either the Original Lease or the First Amendment was procured by fraud. Insistence itself is not a misrepresentation of fact. *See* BLACK'S LAW DICTIONARY 18c (10th ed. 2014) (defining "misrepresentation of fact" as "[a] false statement about the occurrence, existence, or quality of an act, circumstance, event, or thing, tangible or intangible").

We conclude Baribeau has not identified any evidence in the record either conclusively proving her affirmative defenses as a matter of law or raising a material question of fact sufficient to defeat Hill Country's motion for a directed verdict on those defenses. Accordingly, we overrule Baribeau's third issue.

## Conclusion

Having overruled Baribeau's first and third issues, we affirm the trial court's judgment. For the reasons set forth above, we need not address Baribeau's second issue.

Patricia O. Alvarez, Justice