

FILED

Apr 17 2015, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kevin W. Vanderground
Church, Church, Hittle & Antrim

Rick C. Gikas
Merrillville, Indiana

ATTORNEY FOR APPELLEE

Gregory A. Crisman
Carly A. Brandenburg
Eichhorn & Eichhorn, LLP
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Angelique Lockett and Lanetra
Lockett,

*Appellants-Plaintiffs,*

v.

Planned Parenthood of Indiana,
Inc., and Cathy McGee,

*Appellees-Defendants*

April 17, 2015

Court of Appeals Case No.
45A05-1407-CT-340

Appeal from the Lake Superior Court
The Honorable William E. Davis,
Judge
Cause No. 45D05-1109-CT-175

**Bailey, Judge.**

# Case Summary

[1]     Angelique Lockett ("Angelique") and her mother Lanetra Lockett ("Lanetra")
(collectively, "the Locketts") appeal the trial court's grant of summary

judgment in favor of Planned Parenthood of Indiana, Inc.[1] ("Planned Parenthood") after Angelique, then a minor, intentionally misrepresented herself to be eighteen-years-old and obtained an abortion at a Planned Parenthood clinic without Lanetra's consent. We affirm the trial court's grant of Planned Parenthood's motion for summary judgment because the Locketts failed to present their claims first to a medical review panel, as required by the Medical Malpractice Act[2] ("the MMA"), and thus the trial court lacked subject matter jurisdiction over the claims. However, to the extent that the trial court's order appears to have dismissed the Locketts' claims against defendant Cathy McGee ("McGee"),[3] we reverse and remand with instructions to correct the order.

# Issues

The Locketts present three issues on appeal, which we consolidate and restate as the following one: whether the trial court erred in granting Planned Parenthood's motion for summary judgment where the Locketts' claims against a health care provider based on an alleged failure to obtain informed consent were not presented first to a medical review panel.

---

[1] Now Planned Parenthood of Indiana and Kentucky, Inc.

[2] Ind. Code § 34-18.

[3] McGee is not a party to this appeal.

[3] We also address *sua sponte* the status of the Locketts' claims against McGee.

# Facts and Procedural History

[4] In early 2010, then seventeen-year-old Angelique suspected she was pregnant and informed her boyfriend's mother, McGee. Present during the conversation with McGee was Raven Francis ("Francis"), the girlfriend of another of McGee's sons. Although unsure if she was even pregnant, Angelique discussed with McGee and Francis the possibility of obtaining an abortion at Planned Parenthood. Francis, who was eighteen-years-old at the time, offered to loan Angelique her Indiana State-issued identification card ("ID") so that Angelique could represent herself to Planned Parenthood as old enough to consent to medical treatment. Francis's boyfriend opined that Angelique and Francis resembled each other, even though Angelique weighed twenty pounds less and stood four inches shorter than the weight and height listed on Francis's ID. Angelique was skeptical that the ruse would work, but borrowed Francis's ID.

[5] On January 22, 2010, unbeknownst to Lanetra, McGee took Angelique to Planned Parenthood's Merrillville office. Angelique stated that "the whole purpose of going there was first to see if I was pregnant." (App. 59.) Upon arrival, Angelique represented herself to the office staff as eighteen-year-old Francis, and McGee, using her own name, posed as Angelique's mother. Angelique presented Francis's ID to the office staff, who looked at it and made a copy. The employee who accepted the ID attested that she checked the ID, "saw no reason to doubt the identity that the patient had presented" and

"observed that the patient's identification showed her age to be 18." (App. 73.) Angelique and McGee were then given forms to fill out, some of which McGee filled out on Angelique's behalf. Angelique also filled out forms, including at least one on which she began to sign her actual name beginning with the letter "A," but adjusted to reflect the name "Raven Francis."

[6] During the visit, Angelique underwent an ultrasound and blood and urine tests. The tests confirmed that Angelique was in fact pregnant and in her first trimester. After undergoing counseling outside of McGee's presence, Angelique forged the name "Raven Francis" on a form consenting to an abortion and acknowledging that she had received the statutorily-prescribed information regarding the procedure and abortion alternatives. McGee paid in advance for the procedure. Angelique did not tell anyone at Planned Parenthood that she was actually Angelique Lockett or that McGee was not her mother.

[7] After a six day waiting period, Angelique returned to Planned Parenthood on January 28, 2010, again represented herself as Raven Francis, and an abortion was provided. McGee was not present at the beginning of the appointment, but arrived later. Lanetra, who was not aware that her daughter was pregnant and considering an abortion, did not consent to the procedure.

[8] On August 30, 2011, Angelique, now an adult, and Lanetra filed a complaint against Planned Parenthood and McGee, alleging that Angelique and Lanetra were harmed when Planned Parenthood's physician performed an abortion on

Angelique without Lanetra's consent. Angelique and Lanetra specifically alleged against Planned Parenthood the following two claims: strict liability for failing to comply with Indiana Code chapter 16-34-2 (concerning requirements for legal abortions, informed consent procedures, parental consent, and criminal penalties for noncompliant physicians) and negligence for breaching duties imposed by Indiana Code chapter 16-34-2. Angelique also brought against both Planned Parenthood and McGee claims for assault, battery, and negligent infliction of emotional distress.

[9] On December 5, 2013, Planned Parenthood filed a motion for summary judgment, in which it argued that immunity provisions in the Health Care Consent Act[4] relieved Planned Parenthood of liability and that the Locketts should be equitably estopped from pursuing their claims due to Angelique's misrepresentations. After the Locketts filed their response on May 28, 2014, Planned Parenthood filed a reply brief on June 5, 2014 in which it also argued that Indiana's statutes governing abortion, including Indiana Code chapter 16-34-2, do not create a private right of action for individuals such as the Locketts.

[10] On June 13, 2014, the trial court held a hearing on Planned Parenthood's motion for summary judgment. The court also heard argument on the Locketts' motion to strike portions of affidavits designated by Planned Parenthood in support of its summary judgment motion.

---

[4] *See* I.C. § 16-36-1-10(a).

On June 20, 2014, the trial court entered an order granting the Locketts' motion to strike certain evidence. The court also found: "There is no genuine issue that the Statute I.C. § 16-34-2-4 [governing parental consent for abortions performed on minors] does not confer on the Plaintiff a private right of action, which would allow her to bring a civil suit against the Defendants." (App. 1.) The trial court then granted Planned Parenthood's motion for summary judgment. The court also dismissed the Locketts' complaint in its entirety and entered "Judgment for Defendants."

The Locketts now appeal the trial court's grant of summary judgment in favor of Planned Parenthood.

# Discussion and Decision

## Standard of Review

Indiana Trial Rule 56 governs motions for summary judgment. Trial Rule 56(C) provides that a trial court shall grant summary judgment for the movant "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When we review a grant or denial of a motion for summary judgment, our standard of review is the same as for the trial court. *Asklar v. Gilb*, 9 N.E.3d 165, 167 (Ind. 2014). The moving party must show there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Id.* Summary judgment is improper if the moving party fails to carry its burden, but

if it does, then the non-movant must present evidence establishing the existence of a genuine issue of material fact. *Id.*

[14] When we decide whether summary judgment was properly granted or denied, we consider only the evidence the parties specifically designated to the trial court. T.R. 56(C), (H). We construe all facts and all reasonable inferences established by the designated evidence in favor of the non-moving party. *Asklar*, 9 N.E.3d at 167. "As a reviewing court, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather may affirm a grant of summary judgment upon any theory supported by the evidence." *Keaton & Keaton v. Keaton*, 842 N.E.2d 816, 821 (Ind. 2006).

## Claims against Planned Parenthood

[15] On appeal, the Locketts challenge the trial court's grant of summary judgment in favor of Planned Parenthood. Mindful that we may affirm a grant of summary judgment "upon any theory supported by the evidence," *id.*, we examine first whether the trial court had subject matter jurisdiction over the Locketts' claims against Planned Parenthood.

## Subject Matter Jurisdiction

[16] Subject-matter jurisdiction is the power of a court to hear and decide a particular class of cases. *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006), *trans. denied*. To resolve the issue of subject-matter jurisdiction, we must determine that the claim involved falls within the general scope of authority conferred on a court by the Indiana Constitution or by

statute.  *Id.*  Subject-matter jurisdiction cannot be waived and may be raised by the parties or the court at any time, including on appeal.  *Id.*

[17]  Indiana Code section 34-18-8-4 provides that, with limited exceptions, "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . . and (2) an opinion is given by the panel."  Therefore, the MMA "grants subject-matter jurisdiction over medical malpractice actions first to the medical review panel, and then to the trial court."  *Putnam Cnty. Hosp. v. Sells*, 619 N.E.2d 968, 970 (Ind. Ct. App. 1993).  "'Until the panel issues its opinion, the trial court has no jurisdiction to hear and adjudicate the claim.'"  *Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014) (quoting *Stafford v. Szymanowski*, 13 N.E.3d 890, 897 (Ind. Ct. App. 2014)).

[18]  The MMA defines "malpractice" as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient."  I.C. § 34-18-2-18.  Under the MMA, a "tort" is "a legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another."  I.C. § 34-18-2-28.  "Health care" is defined as "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement."  I.C. § 34-18-2-13.  A "health care provider" includes "a

corporation . . . licensed or legally authorized by this state to provide health care or professional services as a . . . hospital. . . .” I.C. § 34-18-2-14(1).

[19] Under the MMA, a “patient” means “an individual who receives or should have received health care from a health care provider, under a contract, express or implied[.]” I.C. § 34-18-2-22. A patient also “includes a person having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider.” I.C. § 34-18-2-22. The statute further provides that “[d]erivative claims include the claim of a parent or parents . . . including claims for loss of services, loss of consortium, expenses, and other similar claims.” I.C. § 34-18-2-22.

[20] Neither the fact that the alleged misconduct occurs in a healthcare facility or that the injured party was a patient of the facility or provider are dispositive as to whether the claim sounds in medical malpractice. *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006), *trans. denied*. The MMA indisputably concerns itself with the behavior or practices of a physician acting in his or her professional capacity as a provider of medical services, but does not apply to acts or omissions of a health care provider unrelated to or outside the provider’s role as a health care professional. *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct. App. 1990), *trans. denied*. Furthermore, the language of the MMA, “read with due regard to the subject matter, suggests actions undertaken in the interest of or for the benefit of the patient’s health, i.e. conduct engaged in by a physician which is curative or salutary in nature or effect.” *Id.* It thus excludes from its scope “conduct of a provider unrelated to the promotion of a

patient's health or the provider's exercise of professional expertise, skill or judgment." *Id.* "It is therefore the substance of a claim, not its caption, which determines whether compliance with the [MMA] is necessary." *Van Sice v. Sentany*, 595 N.E.2d 264, 266 (Ind. Ct. App. 1992).

[21] Here, there is no question that Planned Parenthood qualifies as a "health care provider" under the MMA. Health care providers include hospitals, I.C. § 34-18-2-14(1), and the MMA defines a "hospital" as "a public or private institution licensed under IC 16-21-2." I.C. § 34-18-2-16. Abortion clinics, such as Planned Parenthood's Merrillville office, are licensed under Indiana Code section 16-21-2. *See* I.C. § 16-21-2-1.

[22] Angelique presented at Planned Parenthood, a health care provider, seeking health care services: specifically, a pregnancy test, ultrasound, and ultimately an abortion procedure performed by a physician at a licensed clinic. Under Indiana law, legal abortions occur for reasons and in circumstances determinable only in "the professional, medical judgment of the pregnant woman's physician." I.C. §§ 16-34-2-1(a)(1)-(3). Thus, the abortion provided to Angelique at a licensed clinic by a licensed physician falls squarely within the MMA's definition of "health care." *See* I.C. § 34-18-2-13.[5]

---

[5] We find the case at hand clearly distinguishable from *Collins*, 552 N.E.2d 507, in which a panel of this Court confronted the applicability of the MMA to a case involving abortion. As succinctly summarized in *Boruff v. Jesseph*, "[i]n *Collins*, the plaintiff alleged the defendant physician was her lover, and that he had committed a battery against her by deliberately, wrongfully, and painfully aborting their fetus immediately after performing a pelvic exam on the plaintiff and lying to her that she was not pregnant." 576 N.E.2d 1297, 1298 (Ind. Ct. App. 1991). The *Collins* court held that the MMA did not apply to such "wanton and

[23] As an individual who sought health care from a health care provider, Angelique unquestionably qualifies as a "patient" under the MMA. *See* I.C. § 34-18-2-22. Although Lanetra did not directly receive health care from Planned Parenthood, as Angelique's mother, she also qualifies as a patient to the extent that she has "a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of a health care provider." I.C. § 34-18-2-22.

[24] Turning to the substance of the Locketts' claims, they allege five theories of recovery all arising out of the same act. As succinctly explained in their brief, "the act that is complained of" is Planned Parenthood's "failure to obtain voluntary and informed consent before performing an abortion" and that this failure was "the direct cause of the injuries suffered by both Lanetra and Angelique Lockett." (Appellant's Br. 17.) More specifically, the alleged wrong is that Planned Parenthood's patient intake procedures were inadequate to detect Angelique's intentional misrepresentations about her identity, age, and ability to consent to medical treatment. Because Angelique was in fact a minor, and Lanetra did not provide her consent, the Locketts allege that Planned Parenthood failed to obtain informed consent before providing health care to Angelique and that the failure led to both Angelique's and Lanetra's injuries.

gratuitous" conduct undertaken "without the patient's consent and despite her protests[,]" reasoning that "[i]n no way can it logically be said that the legislature intended such behavior to constitute the rendition of health care or professional services." *Collins*, 552 N.E.2d at 511. No such wanton and gratuitous conduct is at issue here, where Angelique presented at a licensed clinic as a patient seeking professional health care services.

The duty to obtain informed consent "arises from the relationship between the doctor and patient, and is imposed as a matter of law as are most legal duties." *Culbertson v. Mernitz*, 602 N.E.2d 98, 101 (Ind. 1992) (citation and quotation marks omitted). In obtaining informed consent, a physician must comply with the standard of a reasonably prudent physician. *Id.* at 104. Complete lack of informed consent to a harmful touching in the medical context traditionally was viewed as a battery claim. *Spar v. Cha*, 907 N.E.2d 974, 979 (Ind. 2009). *See also Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d 608, 610 (Ind. 2007) ("Failure to obtain informed consent in the medical context may result in a battery."). More recently, unless there is a complete lack of consent, the theory is considered a specific form of negligence for breach of the required standard of professional conduct. *Spar*, 907 N.E.2d at 979. Regardless of the caption, it is now well-settled in Indiana law that,"[i]n the course of rendering professional services to a patient, a physician's acts of negligence, including acts which constitute a breach of the duties to disclose information and obtain informed consent, are malpractice." *Boruff*, 576 N.E.2d at 1299. Furthermore, we observe that cases in which patients have alleged a lack of informed consent, but in which the applicability of the MMA is not specifically raised as an issue, generally have proceeded under the MMA. *See, e.g., Spar*, 907 N.E.2d 974; *Mullins*, 865 N.E.2d 608; *Culbertson v. Mernitz*, 602 N.E.2d 98 (Ind. 1992); *Cacdac v. West*, 705 N.E.2d 506 (Ind. Ct. App. 1999), *trans. dismissed*; *Auler v. Van Natta*, 686 N.E.2d 172 (Ind. Ct. App. 1997), *trans. denied*.

With this background in mind, we examine each of the Locketts' claims in turn.

## Assault & Battery

[27] Assault "is effectuated when one acts intending to cause a harmful or offensive contact with the person of the other or an imminent apprehension of such contact." *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991) (citing Restatement (Second) of Torts § 21 (1965)). An actor is subject to liability for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.'" *Mullins*, 865 N.E.2d at 610 (quoting Restatement (Second) of Torts § 13 (1965)). In short, "assault creates an apprehension of imminent harmful or offensive contact, while battery is the intentional harmful or offensive contact." *Knight v. Ind. Ins. Co.*, 871 N.E.2d 357, 362 (Ind. Ct. App. 2007).

[28] The Locketts allege that Planned Parenthood's physician assaulted and battered Angelique when he performed an abortion at a licensed clinic without first obtaining consent. These claims fall squarely within the purview of the MMA. *See Van Sice*, 595 N.E.2d at 267 (finding that plaintiff's complaint, even though captioned as battery, alleged a failure to obtain informed consent and thus fell within the scope of the MMA).

## Negligent Infliction of Emotional Distress

[29] The right to seek damages for emotional distress in actions for negligence, often referred to as actions for negligent infliction of emotional distress, is carefully

circumscribed under Indiana jurisprudence. *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011). As our supreme court has explained:

> [A]ctions seeking damages for emotional distress resulting from the negligence of another are permitted in two situations: where the plaintiff has (1) witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives (i.e., the bystander rule), or (2) suffered a direct impact (i.e., the modified impact rule).

*Id.* (citations omitted).

[30] Angelique's negligent infliction of emotional distress claim is based on a direct impact theory, in which she seeks to recover for emotional trauma sustained as the result of a direct impact, that is, the abortion. To recover from Planned Parenthood on this claim, Planned Parenthood's negligence must be the proximate cause of the direct impact Angelique sustained. *See id.* at 466 (explaining that the modified impact rule arises when the defendant owes a legal duty to the plaintiff or a third-party and the direct impact to the plaintiff is proximately caused by the defendant's breach of that duty).

[31] Here, the negligence complained of is Planned Parenthood's inadequate patient screening procedures, the result of which was the provision of a medical procedure to Angelique without informed consent. Again, Angelique's claim for negligent infliction of emotional distress arising out of a medical procedure performed without informed consent sounds in medical malpractice and is subject to the MMA.

## *Statutory Claims*

[32]     The Locketts' first two counts, brought by both Angelique and Lanetra, are premised on alleged violations of Indiana Code chapter 16-34-2. Though more broadly pleaded, this case implicates two specific sections of the chapter: the informed consent and parental consent requirements.[6] Section 16-34-2-1.1 provides that a physician may only perform an abortion with the "voluntary and informed consent of the pregnant woman upon whom the abortion is to be performed[,]" and specifies an exhaustive list of procedures that must be followed before a physician is considered to have obtained voluntary and informed consent. *See* I.C. § 16-34-2-1.1(a)(1)-(4). Section 16-34-2-4 provides that "[n]o physician shall perform an abortion on an unemancipated pregnant woman less than eighteen (18) years of age without first having obtained the written consent of one (1) of the parents or the legal guardian of the minor pregnant woman." I.C. § 16-34-2-4(a). However, a minor who objects to the parental consent requirement or whose parent or legal guardian refuses to consent may petition the juvenile court for a waiver of the requirement by following the statutory procedures. I.C. § 16-34-2-4(b). A physician may also petition for a waiver in certain circumstances. I.C. § 16-34-2-4(c). The juvenile court shall waive the parental consent requirement "if the court finds that the minor is mature enough to make the abortion decision independently or that an

---

[6] In their brief, the Locketts approach their statutory claims even more narrowly, focusing only on section 16-34-2-4.

abortion would be in the minor's best interests." I.C. § 16-34-2-4(d). Parental consent requirements generally reflect a legislative judgment that, "[a]s immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, . . . parental consultation often is desirable and in the best interest of the minor." *Bellotti v. Baird*, 443 U.S. 622, 640 (1979) (Bellotti II). Informed consent is the basis of parental consent requirements.

[33] We think it is clear that the statute supplements the common law with respect to a physician's duty to obtain informed consent when providing an abortion. The statute provides that "consent to an abortion is voluntary and informed *only if*" the specific statutory conditions are met, I.C. § 16-34-2-1.1(a) (emphasis added), and, in the case of unemancipated minors, parental consent or a judicial waiver is obtained. The physician still has a duty to obtain informed consent, but for this particular health care service, the legislature has expressly established a standard of care to which a physician must adhere.

[34] Although the statute provides the standard of care, the statute has not altered the basic nature of the Locketts' alleged wrong: that Planned Parenthood provided health care to Angelique without first obtaining the patient's informed consent. Angelique's injuries flow directly from an alleged failure to follow the statute's informed consent and parental consent provisions before providing her an abortion. Lanetra also claims injury arising from Planned Parenthood's failure to obtain her consent before providing care to Angelique; as such, Lanetra's claims are derivative of Angelique's claims. *See* I.C. § 34-18-2-22.

[35] When the act complained of is a negligent failure to obtain informed consent in the course of rendering professional services to a patient, the act sounds in malpractice. *See Boruff*, 576 N.E.2d at 1299. And where the claims allege medical malpractice, the Locketts cannot ignore the MMA's procedural dictates and side-step our legislature's grant of subject matter jurisdiction to the medical review board simply by framing their claims as violations of Indiana Code chapter 16-34-2.

[36] In sum, our examination of the complaint and designated facts reveals that, regardless of the individual claim captions, the gravamen of the Locketts' complaint against Planned Parenthood is that the Locketts suffered injury when a health care provider, in the course of rendering professional services to a patient, failed to obtain informed consent. Each of their claims sounds in medical malpractice and fits squarely and firmly within the purview of the MMA. Thus, the Locketts' complaint should have been presented first to a medical review panel.[7] Because the Locketts failed to follow the procedural dictates of the MMA, the trial court had no power to adjudicate the Locketts' claims. Accordingly, the trial court did not err in granting summary judgment in favor of Planned Parenthood and dismissing the Locketts' claims against Planned Parenthood.

---

[7] Presentation to the medical review panel is not necessary where all defendants agree to proceed directly to court or the patient's pleadings include a declaration that the patient seeks damages of fifteen thousand dollars or less. I.C. §§ 34-18-8-5 & 34-18-8-6(a). We see no such agreement in the record or damages limitation in the complaint.

# Claims against McGee

[37]     We turn our attention now to the Locketts' claims against McGee.  In its order, the trial court granted Planned Parenthood's motion for summary judgment. The court also purportedly dismissed the Locketts' complaint in its entirety and entered "Judgment for Defendants," even though McGee may not have been served.

[38]     The Locketts' statement of the case asserts that "McGee has never appeared and no default was entered against her[.]"  (Appellant's Br. 1.)  We note that Trial Rule 55(B) requires that "[i]n all cases the party entitled to a judgment by default shall apply to the court therefor;" however, it does not appear from the record that the Locketts have moved for default judgment.  Moreover, to the Locketts' point that McGee has not appeared, it is unclear whether the Locketts have ever successfully served McGee.  The Chronological Case Summary ("CCS") contains two entries on September 30, 2011, showing that service of the summons and complaint was attempted on McGee by certified mail on September 6, 2011 and returned on September 30, 2011.  One entry states "ACCEPTED," while the other indicates "Unsuccessful – Unclaimed."  (App. 6.)  Then, on August 16, 2012, the CCS contains an entry showing that the Locketts attempted to serve by sheriff an alias summons and complaint. According to an August 27, 2012 entry in the CCS, service by sheriff was returned as "Unsuccessful – Moved" with the comment "BOARDED UP ABANDONED PER SGT. L. SMITH ON 8/24/201[2]."  (App. 6.) Thereafter, the CCS contains no additional entries of attempted service on

McGee, but notes "returned mail addressed to Cathy McGee" on February 25, 2014 (App. 4), and "MAILE[D] PLEADINGS OF 6-20-14 RETURNED UNABLE TO FORWARD ON CATH[Y] MCGEE RECEIVED 7-14-14" on July 16, 2014. (App. 3.)

[39] The fact that McGee did not move for summary judgment does not preclude the trial court from *sua sponte* granting summary judgment to McGee on any issues raised by Planned Parenthood. *See* T.R. 56(B) ("When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party.") Nevertheless, since it appears that McGee has not been served, we think the court's order granting "Judgment for Defendants" and dismissing the complaint entirely was premature. Moreover, although the claims the Locketts state against McGee are framed identically to those brought against Planned Parenthood, McGee's role in encouraging Angelique's misrepresentation to Planned Parenthood places McGee in a substantially different position than Planned Parenthood. In this respect, we believe the trial court's order was also overly-broad. We accordingly remand this case to the trial court to correct its order as to the claims against McGee and for further proceedings.

# Conclusion

[40] The trial court did not err in entering summary judgment in favor of Planned Parenthood on all of the Locketts' malpractice claims brought against Planned

Parenthood. However, because the trial court's order was premature and overly-broad with respect to claims brought against defendant McGee, we remand with instructions to correct the order and for further proceedings consistent with this opinion.

[41] Affirmed in part, reversed in part, and remanded.

Robb, J., and Brown, J., concur.